OPINION OF THE COURT
Marcy S. Friedman, J.
In this action, plaintiff, Heckler Electric Co., Inc. (Heckler), seeks damages for breach of contract. Defendants, City of New York and New York City Transit Authority (City), move for partial summary judgment dismissing the first through fifth causes of action of the complaint.
It is undisputed that plaintiff and defendants entered into a contract for plaintiff’s performance of electrical work on defendants’ construction project; that plaintiff was to complete work under the contract within three years of the date of delivery of the general construction contract, by mid-January 1981; and that plaintiff was delayed in achieving substantial completion for approximately six months, until mid-July 1981.
It is further undisputed that the first through fifth causes of action of the complaint seek various damages for the delay. Defendants move for summary judgment on the ground that plaintiff is barred from seeking such damages based on plaintiff’s failure to comply with article 43 of the parties’ contract, which defendants contend required notice and documentation of delay damages.
Article 43 provides that where a contractor claims that damage was sustained due to the City’s fault, the contractor must, within a limited number of days after the damage is sustained, give the City a written statement “of the nature of the damage sustained” and “an itemized statement of the details and amount of such damage.”[1]
As a threshold matter, plaintiff appears to dispute that article 43 applies to claims for delay damages. In American *79 Std. v New York City Tr. Auth. (167 AD2d 494 [1990], lv denied 78 NY2d 860 [1991]), the Appellate Division, Second Department, held that a virtually identical provision was applicable to a contractor’s claim for delay damages. The Court further held that the contractor’s noncompliance with the provision required dismissal of the delay damage claim, notwithstanding that the contractor had given contemporaneous notice of the delays (specifically, the conditions which threatened to delay performance) under a different provision of the contract.
In Gemma Constr. Co. v City of New York (246 AD2d 451 [1998]), the Appellate Division of this Department was called upon to determine the applicability to a delay damage claim of a notice provision similar to that in American Std. (supra) and the instant case. The Court noted the American Std. holding but, for several reasons, held that the notice provision did not apply to delay damages.
First, the Gemma Court examined the notice provision in the context of the contract as a whole. The Court held that its requirement of contemporaneous notice was in conflict with another provision of the contract which permitted deferred notice of delay damages, and that application of the notice provision to delay damages would therefore violate “ ‘a cardinal rule of construction’ ” by rendering the delay damage provision meaningless. (Gemma Constr. Co. v City of New York, supra, at 454.)
The Court also noted that the notice provision was contained in an article of the contract, located within a chapter of the contract, which governed claims for damages for extra work. Moreover, the notice provision provided that the documentation of the damages was required “ ‘[i]f the Contractor shall also claim to be sustaining damages by reason of any act or omission of the City’.” (Gemma Constr. Co. v City of New York, *80 supra, at 455 [emphasis in the original].)[2] Focusing on the use of the word “also” in this provision, the Gemma Court reasoned that the provision was applicable only where the plaintiff asserted a claim for delay damages as well as such other damages as extra work, but that it had “no application to a claim predicated entirely on the City’s delay.” (Id., at 455.)
While recognizing that prior authority “seem[ed] to accord universal application” to the notice provision (Gemma Constr. Co. v City of New York, supra, at 454) — that is, its application to delay damages — the Gemma Court concluded, upon review of the case law, that similar notice provisions had been applied to delay damage claims only where such claims had not been clearly differentiated from claims for extra work or other damages.
Gemma (supra) also supplied a rationale for distinguishing between extra work and delay damage claims for purposes of enforcement of such a notice provision: the Court explained that in the case of an extra work claim, detailed contemporaneous records of the work are necessary to enable the City to verify whether the extra work was done and, if so, whether the price was reasonable. In contrast, while delay damages may involve additional work performed on account of a delay, “ ‘delay damage claims seek compensation for increased costs * * * whether the costs result because it takes longer to complete the project or because overtime or additional costs are expended in an effort to complete the work on time’ [citation omitted].” (Id., at 453.) “A significant item in delay damages is the increase in fixed costs and overhead incurred by reason of the deferral of the completion date of the project.” (Id.)
Gemma (supra) clearly signaled this Department’s reluctance to apply a contemporaneous notice provision such as article 43 to a delay damage claim. However, the holding was grounded in the Court’s interpretation of a particular contract provision. Prior to Gemma, as the Court noted in its opinion, this Department had applied strict notice requirements to claims which included delay damages. (See, e.g., Nab-Tern-Betts v City of New York, 241 AD2d 379 [1997]; MRW Constr. Co. v City of New York, 223 AD2d 473 [1996], lv denied 88 NY2d 803.) Recently, in Healy/Yonkers/Atlas-Gest v City of New York (258 AD2d 363 [1999]) the Court upheld the dismissal of a delay *81 damage claim for failure to comply strictly with a damage documentation requirement. Interestingly, this decision cited American Std. v New York City Tr. Auth. (supra) approvingly. However, as the decision did not quote the notice provision in question, it cannot be determined whether it was the same as that involved in American Std. and the instant case.
Whether or not Healy/Yonkers/Atlas-Gest (supra) presages an erosion of the authority of Gemma (supra), this court concludes, based on interpretation of the contract, that article 43 is distinguishable from the contract provision in Gemma, and that it covers plaintiffs delay damage claim. More particularly, article 43, entitled “Contractor’s Claim for Damage,” appears in chapter 5 of the contract, entitled “Payments to Contractor.” Article 43 and chapter 5 do not contain any limitation as to the categories of damages to which they apply. Indeed, article 43 and chapter 5 do not refer to or distinguish between delay damages and damages for extra work. In addition, there is no other provision of the contract which expressly sets forth notice requirements for recovery of delay damages by the contractor.* *[3] In contrast, the notice provision in Gemma was located within an article and chapter of the contract which governed damages for extra or disputed work as opposed to delay damages. The contract also contained a separate provision governing notice of damages for delay. Moreover, the Gemma notice provision used the word “also,” which is absent from article 43, to denote the claims to which it applied. Unlike the contract in Gemma, the instant contract thus does not contain language which warrants construction of the contemporaneous notice provision so as to render it inapplicable to delay damage claims.
As article 43 applies to plaintiffs delay damage claim, the remaining issue is whether plaintiff complied with its requirements. Plaintiffs statement of claim, dated April 25, 1983, is *82 the first of plaintiffs statements which sets forth the items of plaintiffs delay damages together with their amounts. This statement was furnished approximately 21 months after the substantial completion of the project, and seeks $1,063,569.22, broken down into nine categories of damages. The notice of claim, dated January 29, 1985, increases the claim to $1,143,414.60, repeats the items of damages included in the statement of claim, and adds two new items of damages to which the increase of the total amount is attributable.[4]
The statement of claim was filed pursuant to article 42 of the contract, which provides that in order to preserve a claim for damages resulting from the City’s neglect or fault, the contractor must file a detailed statement of damages within 40 days of mailing to the contractor of the final payment under the contract. The notice of claim was filed pursuant to statute as a condition precedent to commencement of this action. As plaintiff apparently acknowledges, the filing of these notices does not excuse compliance with the separate, contemporaneous notice requirements of article 43.
Rather, plaintiff claims that it complied with article 43 based on 11 letters which plaintiff sent to the New York City Transit Authority, and on its contemporaneous submission of payroll records to defendants. The letters, dated from January 2, 1980 through February 28, 1983, set forth the particular aspects of plaintiffs work that were delayed and the reasons for the delay. Most of the letters notify defendants of plaintiffs intent to seek delay damages; one notifies defendants of some of the items of damages that were later included in the statement of claim; but none sets forth the categories of delay damages with their amounts.[5]
*83 While plaintiff argues that the letters satisfy the requirement of article 43 for provision of contemporaneous written statements as to “the nature of the damage sustained,” plaintiff appears to acknowledge that the letters do not satisfy the requirement for itemized statements of the amount of the damage. Plaintiff contends, instead, that it furnished payroll records to defendants which itemized its increased labor costs as a result of the delay, and that it was not reasonably possible to provide contemporaneous itemized statements of the amount of the damages for the items of its claim other than labor costs.
As to the labor costs, plaintiff argues that it complied with article 43 by providing defendants with its weekly payroll reports and monthly payment requisitions, because “[w]hen the labor amounts payable under the monthly requisitions are deducted from the labor costs reflected in Heckler’s weekly certified payroll reports, the difference represents labor costs Heckler was incurring for which claim is made in this action.” (Affidavit in opposition of Charles Heckler 4 [Heckler Aff.].)
Contrary to plaintiffs contention, the monthly requisitions appear to include charges for items not necessarily attributable to delay, such as additional work and contract modifications. In addition, they do not clearly differentiate between charges for materials and charges for labor. It is not apparent from the face of the payroll records, and plaintiff does not explain, how labor costs incurred as a result of the delays could be calculated by means of simple arithmetic, using figures from the monthly requisitions and weekly payroll reports. These records are accordingly insufficient as a matter of law to demonstrate, or to raise a triable issue of fact as to, compliance with article 43 with respect to the labor costs. (See, A.H.A. *84 Gen. Constr. v New York City Hous. Auth., 92 NY2d 20 [1998], rearg denied 92 NY2d 920 [notice provision similar to article 43 but applicable to claims for damages for extra work held not satisfied by contractor’s submission of payroll reports which did not differentiate between contract work and disputed work].)
Even if the payroll records constituted itemized statements of plaintiffs increased labor costs, the claim for labor is merely one of 11 items of delay damages, amounting to approximately 25% of the total claim. Significantly, however, plaintiff wholly fails to support its claim that it was not reasonably possible to furnish contemporaneous itemized statements of the amount of any of the other items of damage.
Plaintiff claims, perhaps correctly, that it is “often easier” to furnish contemporaneous notice of damages for extra work than for the cost of delay, because “extra work is normally performed during a specific time frame while delay damages are sustained in a variety of categories, and in a stop-and-start fashion over an extended period of time.” (Heckler Aff. ¶ 9.) However, while plaintiff further claims that delay damages “often accrue after the delay period ceases, and are sometimes measured by costs incurred during the period between anticipated job completion and actual job completion” (ibid.), plaintiff makes no showing that this method of measuring delay damages was appropriate, or even used, in the instant case. Nor does plaintiff offer any factual basis for its further assertion that in the instant case, all of the items of damage other than labor “were incurred or accrued only after the delays had their cumulative effect on the project.” (Id., ¶ 14.)
Indeed, plaintiff fails to differentiate between the various items of delay damages, to specify the dates on which each item was incurred, and to explain why each particular item could not be ascertained until “after the delays had their cumulative effect.” Even if the damages for various items could not be ascertained until after the delays had their effect, plaintiff gives no explanation for its failure to produce an itemized statement of the damages until the filing of the April 25, 1983 statement of claim, nearly two years after the substantial completion of the work. Nor does plaintiff make any showing as to why it could not have estimated the various items of damages while the delays were occurring, assuming that it *85 could not ascertain the actual damages during such time.[6] Plaintiff thus fails to submit any proof that it was unable, while the delays were ongoing, either to calculate its actual costs or to estimate its costs, for any of the items other than labor costs which are included in the delay damage claim.
In sum, plaintiff not only failed to furnish contemporaneous itemized statements of its delay damages, but now fails, in opposition to defendants’ motion, to raise a triable issue of fact as to whether it was reasonably possible to do so. Under these circumstances, the failure to furnish such statements constituted noncompliance with article 43. To the extent that plaintiff contends that its statements as to the nature of the delay damages and its payroll records constituted substantial compliance with article 43, this contention is unavailing. It is well settled that strict compliance is required with contract provisions requiring notice and itemization of damages. (See, Healy/Yonkers/Atlas-Gest v City of New York, 258 AD2d 363, supra; MRW Constr. Co. v City of New York, 223 AD2d 473, supra; Lasker-Goldman Corp. v City of New York, 221 AD2d 153 [1st Dept 1995], lv dismissed 87 NY2d 1055 [1996].)
Moreover, plaintiff’s noncompliance with article 43 was not excused by its compliance with other provisions of the contract which required it to give defendants notice of the nature of, as opposed to amount of damages for, the delays. While plaintiff concededly complied with article 55, which mandated notice of the conditions causing delay, the purpose of such notice was to enable plaintiff to obtain an extension of time for its own performance, and to avoid payment to defendants of liquidated damages for late performance which would otherwise have been authorized under this article. It has been expressly held that compliance with a notice provision such as article 55 is *86 not a substitute for compliance with the separate requirements of a provision such as article 43 regarding notice of the amount of the damages. (American Std. v New York City Tr. Auth., 167 AD2d 494, supra; see also, Huff Enters. v Triborough Bridge & Tunnel Auth., 191 AD2d 314 [1st Dept 1993], lv denied 82 NY2d 655.)
Finally, plaintiffs contention that defendants waived compliance with article 43 is without merit. Plaintiffs claim of waiver is based on defendants’ conduct of an audit of plaintiffs books in 1986 and 1987, and defendants’ counsel’s consent, given at a claims hearing, to the setting up of this audit. The audit was authorized by article 72 (e) of the contract. By the terms of article 62, the exercise of this remedy did not constitute a waiver of any other remedy under the contract.
The court has considered plaintiffs remaining contentions and finds them to be without merit.
Defendants’ motion is granted to the extent of awarding defendants partial summary judgment dismissing the first through fifth causes of action of the complaint.

. Article 43 provides as follows: “Contractor’s Claim, for Damage. If the Contractor claims compensation for any damage sustained by reason of any act, neglect, fault or default of the City or the Authority or their agents, he shall, within 10 days after the sustaining of such damage, furnish a written statement to the Engineer of the nature of the damage sustained. On or *79 before the fifteenth day of the month succeeding that in which any such damage shall have been sustained, the Contractor shall file with the Engineer an itemized statement of the details and amount of such damage. Unless such statement shall be made as thus required, his claim for compensation may in the discretion of the Authority be forfeited and invalidated and he shall not be entitled to payment on account of any such damage. The provisions of this Article shall not be construed as a recognition or admission of any legal liability on the part of the City to pay any sum on account of any damage suffered in connection with or arising out of the performance of this contract or any part thereof.” (The italicized title is in bold type in the original.)

. The notice provision in Gemma (supra) was similar to article 43, with the exception of the word “also.”

. While the parties have not identified specific portions of the contract which govern damages for extra work as opposed to delay damages, review of the contract shows that damages for extra work are provided for in chapter 3, whereas chapter 8, entitled “Time for Completion, Damage for Delay, Etc.,” provides for certain delay damages. More particularly, article 55, which is located within chapter 8, provides for the City to receive liquidated damages in the event of the contractor’s delay. This article also authorizes the contractor to obtain an extension of time for its performance where the contractor is delayed by reason of the City’s conduct (or other specified events), provided that the contractor gives timely notice to the City of any condition which “threatens to delay” the contractor’s timely performance. But article 55 does not give the contractor a remedy in the form of damages for the City’s delay.

. The damages itemized in the statement of claim are as follows: “1) Additional labor costs — $297,062; 2) Delay and loss of efficiency — $179,025.06; 3) Additional materials costs — $31,090.67; 4) Additional storage costs— $11,490.65; 5) Miscellaneous — $49,372.10; 6) Extended direct field expenses— $264,554.00; 7) Overhead and profit — $174,036.14; 8) Lost interest due to payment delays and change orders — $49,008.84; 9) Contract balance due— $7,929.76.” The two new items of damages in the notice of claim are: “additional costs for heat tracing existing sprinkler lines and insulation— $46,980.52”; and “additional costs for deletion of bus pits and substitution of bus hoists under AWO #1 — $3,850.74.”

. For example, the November 14, 1980 letter requests an extension of time to perform pursuant to article 55, and with respect to damages, states: “As soon as the data becomes available, we will present a claim for the additional costs incurred as a result of this delay.” The February 11, 1981 letter states: “We intend to present a claim for an equitable adjustment in time of *83 contract completion and for our additional costs resulting from the above delay.” The February 17, 1981 letter is to the same effect. The April 29, 1980 letter states: “It has been impossible for us to complete our work in an orderly and efficient manner. Accordingly, we intend to present a claim for the additional costs involved in the performance of the above work due to your failure to coordinate the work of the prime contractors.”
The January 2, 1980 letter, which gives the most detailed notice of the specific items of the delay damages, merely states: “We intend to process a claim for an equitable adjustment in time of contract performance and for our additional costs associated with the above delay including labor and material escalation costs, manpower inefficiency and storage costs.”
Three of the 11 letters, beginning with the December 29, 1981 letter, were written after the date of substantial completion of the project. The last letter, from February 28, 1983, describes itself as an application pursuant to article 55 of the contract for an extension of time within which to complete the work under the contract by 445 days.

. Defendants concede that had plaintiff shown that it lacked records to prove its actual increased costs while delays were ongoing, plaintiff could have complied with article 43 by submitting estimated costs at least for items 1 through 4 and 6 of the statement of claim (additional labor, loss of efficiency, additional materials, additional storage costs, and extended direct field expenses), and then amending the estimates when it ascertained the actual damages.
It is noted that home office overhead, a significant item of delay damages (see, Gemma Constr. Co. v City of New York, supra, 246 AD2d, at 453), may be difficult to measure even after the delays have ended. Thus, even at trial, it may be permissible to estimate the overhead increases by use of a mathematical formula, provided that it is shown that overhead increases were in fact incurred as a result of delays but that proof of the actual amount of the increases is unavailable due to the nature of the business. (See, Berley Indus. v City of New York, 45 NY2d 683 [1978].)