■ GREENWICH CAPITAL FINANCIAL PRODUCTS, INC., Appellant, v METIN NEGRIN, Respondent. [903 NYS2d 346]—

Order, Supreme Court, New York County (Bernard J. Fried, J.), entered September 3, 2009, which denied plaintiff's motion

for summary judgment and granted defendant's cross motion for summary judgment dismissing the complaint, unanimously modified, on the law, the cross motion denied with respect to the cause of action based on the Guaranty of Recourse Obligations (Recourse Guaranty), that cause of action reinstated, plaintiff's motion granted with respect to it, and the matter remanded for calculation of damages and entry of judgment, and otherwise affirmed, without costs.

Plaintiff entered into a loan agreement with Lexin Celebration III LLC (Lexin), pursuant to which Lexin borrowed funds for a condominium conversion project in Florida. The loan was nonrecourse as to Lexin, except with respect to particular acts and occurrences defined in section 10.1 as "Borrower's Recourse Liabilities," such as failure to pay real estate taxes, and "Springing Recourse Events," such as bankruptcy. The loan agreement also required Lexin to make certain payments to plaintiff, to be held in a subaccount for the purpose of paying taxes and insurance, as set forth in section 3.3. Simultaneously with execution of the loan agreement, defendant Negrin executed two guaranties, the Recourse Guaranty, which refers to the borrower's recourse obligations under section 10.1, and the Special Payment Guaranty, which refers to the borrower's payment obligation under section 3.3.

On the stated maturity date of November 1, 2007, Lexin did not pay the principal amount due, and it thereafter failed to make a payment of about $1.2 million, demanded by plaintiff purportedly pursuant to section 3.3 for payment of real estate taxes, or to pay the real estate taxes when they became due on March 31, 2008. Plaintiff paid the real estate taxes in order to preserve its lien priority, demanded that Negrin reimburse it as guarantor of Lexin's special payment and recourse obligations, and commenced the instant action to recover against Negrin under both guaranties.

The motion court dismissed both claims, without considering the terms of the guaranties, on the ground that Lexin was not contractually obligated to pay real estate taxes after the stated maturity date of the loan, and therefore Negrin's liability was not triggered under either guaranty. This was error since it is undisputed that the loan agreement expressly required Lexin to pay real estate taxes on its property throughout the "Term" of the loan, which is defined to mean "the entire term of this Agreement, which shall expire upon repayment in full of the Debt and full performance of each and every obligation to be performed" by Lexin. Since Lexin did not pay the debt in full on the stated maturity date of the loan, its contractual obligation to pay real estate taxes continued even after it defaulted.

Under the Recourse Guaranty, Negrin agreed "absolutely and unconditionally" to pay "Guaranteed Obligations," defined as "(i) from [and] after the date of the accrual of any of Borrower's Recourse Liabilities and (ii) from and after the date that any Springing Recourse Event occurs, payment of all the Debt as and when the same is due in accordance with the Loan Documents." The guaranty refers to the loan agreement for the definition of capitalized terms. Plaintiff contends that defendant's obligation under the Recourse Guaranty was triggered when Lexin failed to pay real estate taxes, resulting in accrual of a Borrower's Recourse Liability under section 10.1. Defendant, arguing that "and" signals that both conditions must occur, argues that his liability could be triggered only if both a Borrower's Recourse Liability accrues *and* a Springing Recourse Event had also occurred.

The guaranty must be read in the context of the loan agreement, which was executed simultaneously (*see Components Direct v European Am. Bank & Trust Co.*, 175 AD2d 227, 230-231 [1991]; *see Hirsch v Rifkin*, 166 AD2d 293, 294 [1990]), and in a manner that accords the words their "fair and reasonable meaning," and achieves "a practical interpretation of the expressions of the parties" (*Duane Reade, Inc. v Cardtronics, LP*, 54 AD3d 137, 140 [2008]). Put otherwise, a "contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties" (*Matter of Lipper Holdings v Trident Holdings*, 1 AD3d 170, 171 [2003] [citations omitted]).

In this case, interpreting the two clauses in the definitional section of the Recourse Guaranty as referring to the two distinct categories of borrower's recourse obligations that are separately defined in section 10.1 of the loan agreement produces a commercially reasonable and practical result (*see 111 Debt Acquisition LLC v Six Ventures, Ltd.*, 2009 WL 414181, *7-9, 2009 US Dist LEXIS 11851, *18-27 [SD Ohio 2009]). In contrast, Negrin's argument that the two clauses are conjunctive, so that his liability is triggered only when and if a Springing Recourse Event, such as bankruptcy or unauthorized transfer of the property were to occur, depends on "formalistic literalism" (*Duane Reade, Inc.* at 144), ignores common sense, and could lead to absurd results that would leave the first clause without meaning. Construing the Recourse Guaranty to give it a fair and commercially reasonable meaning, the guarantor's liability was triggered when Lexin failed to pay real estate taxes, resulting in the accrual of a Borrower's Recourse Liability under section 10.1 of the loan agreement.

Plaintiff's claim to recover on the Special Payment Guaranty, however, was correctly dismissed since Lexin fulfilled its contractual obligations to make the two payments required under section 3.3, one at the time of execution of the loan agreement and a second on November 1, 2006. A third payment would have been required only if the borrower elected to extend the term of the agreement for an additional year, which did not occur. Plaintiff relies on a clause in section 3.3, which permitted it to require Lexin to make additional monthly contributions if it reasonably determined that the amount in the subaccount was insufficient to pay taxes coming due. However, reading that clause in the context of section 3.3 as a whole, it is evident that it provided a mechanism for interim adjustments to the required deposits, and cannot be read to extend the subaccount arrangement beyond the stated maturity date of the loan. Concur—Gonzalez, P.J., Sweeny, Acosta, Renwick and Román, JJ. **[Prior Case History: 24 Misc 3d 1245(A), 2009 NY Slip Op 51890(U).]**