# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**876**

**CA 11-00339**

PRESENT: SCUDDER, P.J., CENTRA, FAHEY, GREEN, AND GORSKI, JJ.

---

STEVEN M. TUDISCO AND GENESEE VALLEY
LEASING, INC., PLAINTIFFS-APPELLANTS,

V                                            MEMORANDUM AND ORDER

CARL DUERR AND CAROL DUERR,
DEFENDANTS-RESPONDENTS.
(APPEAL NO. 2.)

---

PIRRELLO, MISSAL, PERSONTE & FEDER, ROCHESTER (STEVEN E. FEDER OF
COUNSEL), FOR PLAINTIFFS-APPELLANTS.

WILLIAM S. RUBY, ROCHESTER, FOR DEFENDANTS-RESPONDENTS.

---

Appeal from an order of the Supreme Court, Monroe County (Kenneth R. Fisher, J.), entered July 26, 2010. The order, inter alia, granted defendants' motion to "modify and/or resettle" an order entered April 27, 2010 pursuant to CPLR 2221 (a) and awarded defendants attorneys' fees of $24,940.29.

It is hereby ORDERED that the order so appealed from is unanimously modified on the law by vacating the amount of $41,000 awarded on the first counterclaim and substituting therefor the amount of $35,100, vacating the award of attorneys' fees, reinstating the fourth and fifth causes of action in accordance with our decision herein concerning the amount paid on the promissory note and granting plaintiffs judgment on liability for those causes of action, and as modified the order is affirmed without costs, and the matter is remitted to Supreme Court, Monroe County, for further proceedings in accordance with the following Memorandum: Plaintiffs commenced this action seeking damages for, inter alia, the alleged conversion by defendants of several pieces of construction equipment, including an excavator with two buckets and a grapple attachment, two backhoes and a bulldozer. Defendants asserted counterclaims for, inter alia, a money judgment for the balance owed on a promissory note. Following a nonjury trial, Supreme Court dismissed the complaint and granted judgment in favor of defendants on the first counterclaim, i.e., for the balance owed on the promissory note, and awarded them reasonable attorneys' fees with respect to the first counterclaim. Defendants thereafter moved to "modify and/or resettle" that order pursuant to CPLR 2221 (a), alleging that the court erred in stating that ownership of the excavator had been transferred to defendants. Plaintiffs cross-moved to "modify[ ]" the order pursuant to CPLR 2221 (a) on the ground that the corrected statement of fact sought by defendants would

establish that defendants' actions in taking possession of the excavator constituted conversion.  Plaintiffs appeal from an order that granted the motion, denied the cross motion and awarded attorneys' fees to defendants.

Viewing the evidence in the light most favorable to defendants, we conclude that there is no fair interpretation of the evidence supporting the court's determinations that defendants did not convert the equipment in question, i.e., the excavator and three attachments, the two backhoes and the bulldozer, and that the promissory note did not constitute a security agreement (*see generally Palermo v Taccone*, 79 AD3d 1616, 1618-1620).

" '[T]o establish a cause of action in conversion, the plaintiff[s] must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant[s] exercised an unauthorized dominion over the thing in question . . . to the exclusion of the plaintiff[s'] rights' " (*id*. at 1619-1620).  " 'A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession . . . Two key elements of conversion are (1) [the] plaintiff[s'] possessory right or interest in the property . . . and (2) [the] defendant[s'] dominion over the property or interference with it, in derogation of [the] plaintiff[s'] rights' " (*id*. at 1620, quoting *Colavito v New York Organ Donor Network, Inc*., 8 NY3d 43, 49-50).

With respect to the excavator, it is undisputed that Genesee Valley Leasing, Inc. (Genesee Valley) owned the equipment and that plaintiff Steven M. Tudisco was using the equipment to perform work on property owned by defendant Carl Duerr in October 2004.  It is also undisputed that the excavator was thereafter moved by Carl Duerr to other property owned by him and remained there until it was returned to plaintiffs approximately four years later, during the pendency of the instant action, in a severely damaged condition.  At trial, plaintiffs submitted photographs of the excavator taken when it was refurbished at a cost of $44,000, i.e., three months before it was removed by Carl Duerr to his property.  Plaintiffs also presented the testimony of Henry Wells, who inspected the excavator on behalf of the non-party company from which plaintiffs leased the excavator before purchasing it.  Wells testified that he was familiar with how Tudisco maintained equipment and that he had not observed other pieces of equipment owned or used by plaintiffs in the condition that the excavator was in when it was returned to plaintiffs, i.e., inoperable, with broken windows and evidence of a fire in the engine compartment where the hydraulics are located.  The court admitted in evidence the estimate to make the necessary repairs to the excavator in the amount of $85,049.  Defendants merely presented the testimony of Carl Duerr that the excavator was damaged when he received it and the testimony of a former employee of Genesee Valley that the company's employees were "hard" on equipment.  With respect to the three attachments for the excavator, Tudisco testified that they also were located on defendants' property when defendants removed the excavator.  Although

Carl Duerr denied that he had the attachments in his possession, a photograph taken on April 1, 2009 established that the 46-inch bucket was located on defendants' property.  We therefore conclude that plaintiffs established by a preponderance of the evidence that they had a possessory right to the excavator and attachments and that defendants interfered with that right in derogation of plaintiffs' rights (*see Palermo*, 79 AD3d at 1620).

With respect to the two backhoes and the bulldozer, it is undisputed that defendant Carol Duerr is the titled owner of that equipment.  Plaintiffs had leased the equipment from the aforementioned non-party company, and Tudisco asked defendants for assistance in purchasing it.  The record establishes that, in order to execute the transfer of the equipment to Carol Duerr, she paid Syracuse Supply Company $100,000, plaintiffs paid Syracuse Supply Company $16,000 and plaintiffs transferred the credit in the equipment in the amount of $250,000 to Carol Duerr.  The handwritten promissory note, drafted in part by Carol Duerr, states in relevant part that Tudisco would "borrow $100,000 and agree to pay it back by January 1, 2003.  It is up to Carl . . . Duerr to keep the machinery or sue for the money that is owed . . . Tudisco shall pay all legal fees incurred in this transaction.  Genesee Valley . . . is also liable for this transaction."  In his own handwriting, Tudisco added that the minimum payment per month would be $2,400, due and payable in full 18 months from March 13, 2002.  We agree with plaintiffs that they and others on their behalf had paid a total of $64,900 on the promissory note when defendants took possession of the two backhoes and bulldozer in early October 2004, rather than $59,000, as the court found.

We conclude that the court's finding that defendants "loaned" plaintiffs the backhoes and bulldozer to permit Tudisco to generate enough business to pay them back $100,000 and then withdrew their permission to use the equipment " 'could not be reached under any fair interpretation of the evidence' " (*Treat v Wegmans Food Mkts.*, 46 AD3d 1403, 1404).  The finding that plaintiffs had no possessory interest in that equipment " 'produce[s] a result that is absurd, commercially unreasonable [and is] contrary to the reasonable expectation of the parties' " (*Greenwich Capital Fin. Prods., Inc. v Negrin*, 74 AD3d 413, 415).  Instead, we conclude that the promissory note memorialized "an agreement that creates or provides for a security interest" in the equipment (UCC 9-102 [73]), which is "a commercially reasonable and practical result" (*Greenwich Capital Fin. Prods., Inc.*, 74 AD3d at 415).  Indeed, "the provisions of [article 9 of the UCC] with regard to the rights and obligations [of the parties to a security agreement] apply whether title to collateral is in the secured party or the debtor" (UCC 9-202).  The promissory note provided Carl Duerr with remedies available to a secured creditor, i.e., to keep the equipment (*see generally* UCC 9-610; 9-620 [a] [1]), or to sue for the balance of the money owed (*see* UCC 9-601 [a] [1]).

Plaintiffs presented the testimony of Wells, who leased the backhoes and bulldozer to plaintiffs and thereafter sold them to Carol Duerr.  Wells had 40 years experience in leasing and selling construction equipment and testified with respect to the value of

those three pieces of equipment as of September 2004. He testified that one backhoe was valued at $46,000, the other backhoe was valued at $48,000 and the bulldozer was valued at $115,000. Defendants presented the testimony of a witness whom Carl Duerr hired to retrieve one of the backhoes from plaintiffs. That witness testified that the backhoe was inoperable and in severely damaged condition. Defendant failed to present any testimony with respect to the condition of the remaining backhoe and the bulldozer, and we therefore conclude that plaintiff established by a preponderance of the evidence that the value of the backhoes and the bulldozer exceeded the $41,000 that defendants alleged was the amount owed on the promissory note.

Defendants had an obligation to enforce the security agreement in good faith (*see generally* UCC 1-203). Defendants, however, retained the backhoes and bulldozer without complying with the provisions of the UCC, either by disposing of those pieces of equipment in a commercially reasonable manner and paying any surplus to plaintiffs (*see* UCC 9-610 [a], [b]; 9-615 [d] [1]), or by obtaining plaintiffs' consent after the default to retain the equipment in satisfaction of debt (*see* UCC 9-620 [a] [1]; [c]). We therefore conclude that, because plaintiffs established that the value of the backhoes and the bulldozer exceeded the amount that they owed on the promissory note, plaintiffs had a possessory interest in that equipment and defendants' dominion over it was in derogation of the rights of plaintiffs (*see generally Colavito*, 8 NY3d at 49-50; *Five Star Bank v CNH Capital Am., LLC*, 55 AD3d 1279, 1281).

We also agree with plaintiffs that the court erred in awarding attorneys' fees to defendants beyond the scope of the indemnity provision included in the promissory note (*see generally Hooper Assoc. v AGS Computers*, 74 NY2d 487, 491). " '[A] contract assuming th[e] obligation [to indemnify with respect to attorneys' fees] must be strictly construed to avoid reading into it a duty [that] the parties did not intend to be assumed' " (*Zanghi v Laborers' Intl. Union of N. Am., AFL-CIO*, 21 AD3d 1370, 1372, quoting *Hooper Assoc.*, 74 NY2d at 491). In particular, "the language of an indemnity agreement 'should not be extended to include damages [that] are neither expressly within its terms nor of such character that it is reasonable to infer that they were intended to be covered under the contract' " (*id.*). Here, pursuant to the promissory note, defendants are entitled to attorneys' fees related to claims or counterclaims to enforce their rights under the note (*see Gizzi v Hall*, 309 AD2d 1140, 1142). Thus, the court erred in awarding defendants attorneys' fees unrelated to the enforcement of those rights, including attorneys' fees related to the causes of action for conversion of the construction equipment. Further, because the affidavit of defendants' attorney with respect to his fees included only one amount representing the total fees incurred, we are unable to determine the amount of attorneys' fees related to the enforcement of defendants' rights under the promissory note (*see generally RLI Ins. Co. v Smiedala*, 77 AD3d 1293, 1295).

We therefore modify the order by vacating the amount of $41,000 awarded on the first counterclaim, for the balance owed on the promissory note, and substituting therefor the amount of $35,100,

vacating the award of attorneys' fees, reinstating the fourth cause of action and the fifth cause of action with the exception of the reference to $59,000 having been paid to defendants in paragraph 33, inasmuch as this Court has determined that plaintiffs paid $64,900 on the promissory note, and granting judgment to plaintiffs on liability with respect to those causes of action.  We remit the matter to Supreme Court to determine the amount of reasonable attorneys' fees incurred by defendants with respect to the enforcement of their rights under the promissory note and to determine the amount of damages with respect to the fourth and fifth causes of action, following further proceedings if necessary.

Entered:  November 10, 2011                    Patricia L. Morgan
                                               Clerk of the Court