■ TEREX CORPORATION, Appellant-Respondent, v BUCYRUS INTERNATIONAL, INC., Respondent-Appellant. [943 NYS2d 18]—

Order, Supreme Court, New York County (Melvin L. Schweitzer, J.), entered June 7, 2011, which denied plaintiff's motion for summary judgment and granted defendant's motion for summary judgment on the cause of action for declaratory relief interpreting the parties' agreement, and granted plaintiff's motion for summary judgment and denied defendant's motion for summary judgment on the causes of action for specific performance requiring defendant to provide certain books and records and to engage in good faith efforts to resolve the parties' dispute before submitting the dispute to an independent accounting firm, unanimously modified, on the law, to grant plaintiff's motion for summary judgment on its cause of action for declaratory relief and deny defendant's motion on said claim, and to declare that the post-closing adjustment provision in the parties' agreement authorizes adjustments based only on changes in valuation occurring during the period between the signing and the closing and not on any other accounting issues, to grant defendant's motion for summary judgment on the cause of action for specific performance requiring that defendant provide books and records and deny plaintiff's motion on said claim, and to deny plaintiff's motion for summary judgment on the cause of action requiring defendant to engage in good faith resolution of the dispute, and otherwise affirmed, without costs.

On November 23, 2009, plaintiff informed defendant that it was the winning bidder (on a bid of approximately $1.3 billion) at an auction by plaintiff to sell certain assets of its mining equipment business. Before entering into an asset and stock

purchase agreement (ASPA), defendant conducted due diligence and was given access to plaintiff's management, books and records, and to plaintiff's independent auditor.

The ASPA set forth a process for determining the amount of a post-closing purchase price adjustment, which would be required if the final statement of Net Asset Value (NAV) deviated by more than $15 million from the target NAV of approximately $433 million established by the parties. Under section 2.8 of the ASPA, the final statement of NAV was defined as the NAV statement (i) prepared by the buyer, if the seller did not object; or (ii) agreed to by the parties; or (iii) adjusted by a CPA firm if the parties could not resolve their disagreement in good faith.

In particular, under section 2.8 (a), the buyer was required, within 60 day after closing, to prepare a statement containing a calculation of NAV (as defined therein), as of the closing date (the NAVS). Under section 2.8 (b), the seller had 30 days from receipt of the NAVS to provide the buyer with a written objection thereto. Under section 2.8 (c), the buyer had 30 days from receipt to review and respond to the objection. If the parties could not resolve any disagreements over the post-closing adjustment within 30 days of the buyer's response, "after having used their good faith efforts to reach a resolution, they shall refer their remaining differences to Ernst & Young LLP . . . who shall, acting as experts in accounting and not as arbitrators, determine on a basis consistent with the requirements of Section 2.8 (a), and only with respect to the specific remaining accounting related differences so submitted, whether and to what extent the [NAVS] requires adjustment" (section 2.8 [c]).

Defendant provided plaintiff with a NAVS that calculated NAV at $265,516,000 and proposed a $152,403,000 post-closing adjustment. Plaintiff timely objected. When the parties failed to reach an agreement, defendant's counsel wrote to Ernst & Young to request their assistance, in accordance with section 2.8 of the ASPA. Plaintiff then commenced this action seeking injunctive and declaratory relief, and the parties stipulated to seek by cross motions for summary judgment a determination of (1) plaintiff's request for access to the books and records of the mining business and account materials related to the NAVS prepared by defendant; (2) the proper interpretation of defendant's obligation under the ASPA to engage in good faith efforts to resolve the NAV dispute; and (3) the proper scope of jurisdiction and instruction to the CPA firm for any proceeding under section 2.8 (c) of the ASPA.

Reading the parties' agreement "as a harmonious and integrated whole" (*see Matter of Westmoreland Coal Co. v*

*Entech, Inc.,* 100 NY2d 352, 358 [2003]), we find that its post-closing adjustment provision was unambiguously intended solely to govern changes in the value of the assets acquired thereunder that occurred during the period between the signing of the contract and the closing date, and not to allow the buyer defendant to challenge the seller plaintiff's accounting methodology. To allow a designated CPA firm to resolve the parties' dispute by amending the $1.3 billion purchase price pursuant to defendant's proffered interpretation by the approximately $150 million adjustment it sought, after competitive bidding in which defendant had prevailed by only $50 million, would be absurd and commercially unreasonable (*see Greenwich Capital Fin. Prods., Inc. v Negrin*, 74 AD3d 413, 415 [2010]).

Contrary to the motion court's finding, the parties' agreement is indistinguishable from that in *Westmoreland* in that both provide the exclusive remedy of indemnification for any financial misrepresentations by the seller, thereby precluding the use of the post-closing adjustment provision as a remedy. The court also misallocated the parties' burdens with respect to the buyer's due diligence, a significant factor barring defendant's claim for an adjustment (*see Westmoreland* at 359-360), since plaintiff's showing of defendant's unfettered precontractual access to its financial information was unrebutted. However, the court correctly found that it had the authority to instruct the CPA firm, which was expressly charged with being an expert and not an arbitrator, with the proper interpretation of the agreement (*see 936 Second Ave. L.P. v Second Corporate Dev. Co., Inc.,* 10 NY3d 628 [2008]).

Defendant's obligation to provide books and records in connection with the post-closing adjustment is governed by the specific requirements of section 2.8 (c) of the ASPA, not the general inspection provisions of section 5.20 (c) and section 5.26 (a) (*see Oakgrove Constr., Inc. v Genesee Val. Nurseries, Inc.,* 39 AD3d 1283 [2007]). Pursuant to section 2.8 (c), the obligation to provide books and records is triggered by the submission of the dispute to the CPA firm after the prerequisites set forth therein have been fulfilled. Each party is required to provide relevant documents and information to the CPA firm during the proceeding before it, and to each other as directed by the CPA firm. Because this has yet to occur, defendant's motion for summary judgment dismissing the cause of action for specific performance requiring that defendant provide books and records should have been granted and plaintiff's motion denied.

There exist issues of fact as to whether defendant had engaged in good faith efforts to resolve the dispute; the court should not

have tied its determination to whether defendant complied with any obligation to provide books and records.

We have considered the parties' other contentions and find them unavailing. Concur—Tom, J.P., Andrias, Acosta, Freedman and Richter, JJ.