WHITMYER BROS., INC., Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claim No. 57565.)

Third Department, July 13, 1978

104

APPEARANCES OF COUNSEL

*Louis J. Lefkowitz, Attorney-General (Richard J. Dorsey* and *Ruth Kessler Toch* of counsel), for appellant-respondent.

*Max E. Greenberg, Trayman, Cantor, Reiss & Blasky (Julius L. Schapira, Louis Cantor* and *Sayward Mazur* of counsel), for respondent-appellant.

## OPINION OF THE COURT

LARKIN, J.

Claimant, Whitmyer Bros., Inc., as low bidder, was awarded a contract by the Department of Transportation of the State of New York for the improvement of the Cross Westchester Parkway. The contract was dated January 4, 1971 and had a completion date of August 9, 1972. In addition to the main agreement, the contract documents included the proposal, the contract plans and the public works specifications. One major portion of the contract was guide rail work, including rehabilitation of existing guide rails and erection of new ones. Whitmyer presented D. Lambert Railing Co., Inc., as its subcontractor for this portion of the contract, and Lambert was duly approved by the State.

A dispute arose between Lambert and the State's engineer in chief. The dispute generally concerned the manner in which the preparatory work necessary to order the required materials was to be done and the quantity and nature of the guide rail necessary for each of the 308 guide rail runs. After Lambert completed the guide rail work, Whitmyer, acting on Lambert's behalf pursuant to agreement (*Degnon Contr. Co. v City of New York,* 235 NY 481), commenced this action against the State seeking damages for alleged breaches of contract by the State. After a lengthy trial, by decision dated December 6, 1976, the Court of Claims awarded Whitmyer damages in the sum of $243,887.92. Both parties have appealed.

Essentially the Court of Claims found as follows: that the contract documents prepared by the State purported to set forth the requirements for the guide rail work in sufficient detail to allow performance of same; that the State made numerous revisions in the guide rail work set forth in the contract; that almost all of the revisions were made after Lambert had ordered the guide rail materials required under the contract; that the revisions were made in piecemeal fashion over an extended period of time; that the changes were, for the most part, extensive in nature so as to constitute "active interference with the performance of the contract"; that the State "prevented the contract performance in a planned, orderly, economical and efficient manner".

The specific damages to Lambert were set forth in paragraph "16" of the trial court's "additional findings of fact" as follows: "As a result of the unexpected, unforeseeable exten-

sive and substantive changes required by the defendant, Lambert was compelled to delete or amend prior orders for materials, give new orders for materials, rearrange delivery instructions, wait for deliveries, redistribute the previously delivered materials, stop or rearrange post driving dates and erection dates, lose money for labor and equipment that were redeployed and were not being used as productively as planned, and 'hopscotch' the contract performance, instead of proceeding as planned in efficient and economical sequences." The trial court found a direct job cost of $673,471.05 against which it credited a total paid to Whitmyer of $471,493.48 for its erection of the guide rails. To the difference of these subtotals, the sum of $201,977.57, 15% was added for Lambert's overhead and profit, i.e., $30,296.64, creating a subtotal of $232,274.21, which plus Whitmyer's 5% for overhead and profit, i.e., $11,613.71, amounted to total damages in said sum of $243,887.92. The State claims that the judgment was erroneous in its application of the law and the facts, while Whitmyer contends that the amount of damages awarded was inadequate.

Initially we address the State's contention that there were numerous deficiencies in the proof adopted by the Court of Claims in reaching its decision. No less than 10 separate alleged deficiencies are cited, only a few of which warrant our comment. The State claims that the trial court erred in concluding that the contract documents set forth the actual requirements for the guide rails in sufficient detail and that, as a consequence, the changes made were not substantive modifications but merely completion of contract terms. In our view, however, the mere fact that Lambert was required to make some changes once it inspected each run does not mean that the contract gave only a general indication of the work to be done. An examination of the documents and of this record leads us to a conclusion to the contrary.

Although the agreement did reserve to the State "the right, at any time during the progress of the work, to alter the plans or to omit any portion of the work as it may deem reasonably necessary for the public interest", the State failed at the trial and continues to fail on this appeal to differentiate between which of the multitudes of changes made in the guide rail work were alleged to have been covered by this clause and those other changes, the existence of at least some of which is conceded, which were not so covered. The State, which criti-

cizes the claimant for having "wholesaled" its proof in this regard, attempts to refute the trial court's findings by wholesaling its objections to the findings. This argument is without merit.

The specifications for this contract provided that if the contractor were of the opinion that if any of the work ordered to be done were extra work, or if it were in violation of the contract, the contractor should promptly notify the superintendent in writing of such objections. Although the State is correct in stating that the strict requirements of this provision were invoked only with respect to two of the changes the State requested, there is ample evidence in this record that Whitmyer and Lambert considered many of the State's changes as requiring extra work and, by correspondence and other means, so notified the State. In an analogous situation we held that "in cases where the State is apprised of the contractor's claim that extra work beyond the contract was being performed, the State has been precluded from insisting upon strict compliance with the notice provisions" *(Amadeus, Inc. v State of New York,* 36 AD2d 873, 874, app dsmd 29 NY2d 634).

The State's argument that the trial court erred in concluding that the changes caused a severe disruption in Lambert's work schedule is also without merit. This argument is based upon the fact that the State had submitted tabulations listing the exact points of need for all runs by June 10, 1971, while Lambert did not start setting posts until June 9, 1971 and did not start erecting rail until June 10, 1971. This claim ignores the fact that Lambert began to order materials as early as March 12, 1971 and finished ordering by April 30, 1971. Such early ordering was necessary because of a two-month lead time between ordering materials and receiving them. The State's claim that Lambert was capable of changing the order without affecting production is not supported by the record. Also, even if it were established that the changes in these tabulations did not cause severe disruption, we are still confronted with the confusion and disruption caused by the numerous changes made after June 10, 1971 and until October 18, 1971. The trial court's finding of a need by Lambert to "hopscotch" in completing its contractual obligations, rather than in proceeding in the planned orderly manner, with consequent significant extra cost, is fully supported by the record.

We have considered the State's remaining attacks upon the factual finding of the Court of Claims and find them to be without merit. "There is, in our opinion, more than sufficient evidence in this record to support the findings and judicial determination of the trial court. Since the findings and determinations of the trial court are not against the weight of the credible evidence nor contrary to the law, they should not be disturbed" *(Shipman v Words of Power Missionary Enterprises,* 54 AD2d 1052, 1053).

■ The question of the State's liability having been established we must now consider whether the trial court adopted the proper measure of computing Whitmyer's damages. Initially, we agree that Whitmyer was entitled to recover the difference between the direct job cost and the sum thus far paid for the guide rail work (13 NY Jur, Damages, § 140). We reject Whitmyer's claim that it was entitled to the difference between the actual costs and estimated costs as totally without merit. *(Mount Vernon Contr. Corp. v State of New York,* 56 AD2d 952, mot for lv to app dsmd 42 NY2d 889; *Kec Corp. v Fulton-Montgomery Community Coll.,* 44 AD2d 737.)

We also agree with the trial court that Whitmyer was entitled to damages for loss of profits, not only its own profits, but also, since Whitmyer is suing on behalf of Lambert as aforesaid, for profits lost by Lambert (13 NY Jur, Damages, § 110). The following determinations of the Court of Claims are supported by this record: a direct job cost for the guide rail work performed under this contract of $673,471.05; overhead and profit for Whitmyer for the work subcontracted to Lambert of 5%; overhead and profit to Lambert of 15%. We disagree, however, with the trial court's use of these figures in making its final computation of damages. The trial court awarded claimant Whitmyer damages for Lambert's overhead and profit only on the difference between the direct job costs and the amount thus far paid therefor. Clearly, however, Lambert is entitled to recover 15% of the entire direct job cost of $673,471.05, i.e., the sum of $101,020.66. Although the exact contractual setup is not totally clear, it appears from this record that the State has already paid Whitmyer $1,262,518.04 for the guide rail work, while Whitmyer, at the most, has expended only the sum of $1,143,611.57 therefor. This amounts to a profit of more than the 5% which Whitmyer has sought for the subcontracted guide rail work from the time of the filing of its claim and throughout this trial. To

grant Whitmyer an additional 5% on the difference between the direct job cost plus Lambert's overhead and profit minus the amounts thus far paid to Lambert, as did the trial court, provides Whitmyer with an unwarranted windfall.

The damages to claimant Whitmyer are computed as follows: $673,471.05 minus $471,493.48 ($201,977.57) plus .15 times $673,471.05 ($101,020.66) equals $302,998.23.

The judgment should be modified, on the law and the facts, by increasing the principal award to $302,998.23, and, as so modified, affirmed, without costs.

GREENBLOTT, J. P. MAIN, MIKOLL and HERLIHY, JJ., concur.

Judgment modified, on the law and the facts, by increasing the principal award to $302,998.23, and, as so modified, affirmed, without costs.