■ HUFF ENTERPRISES, INC., Respondent, v TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, Appellant. [595 NYS2d 178] — Order of the Supreme Court, New York County (Myriam J. Altman, J.), entered on November 1, 1991, which, *inter alia,* denied defendant's motion for partial summary judgment dismissing plaintiff's first cause of action, is unanimously reversed on the law to the extent appealed from and defendant's motion granted, without costs or disbursements. The Clerk is directed to enter judgment in favor of appellant dismissing and severing the first cause of action.

This action arises out of a contract between plaintiff Huff Enterprises, Inc. and defendant Triborough Bridge and Tunnel Authority for construction of office facilities on Randalls Island. Under the terms of the agreement, work was to begin in April of 1986 and be completed by October 30, 1987, but substantial completion did not occur until December of 1988, and the project was fully completed in 1989. The delay was largely attributable to defendant's revision of the construction plans which required additional performance by plaintiff. Consequently, plaintiff is now seeking compensation for the costs incurred by the delay and for extra work and change orders. As part of its answer, defendant asserts the affirmative defense that plaintiff's failure to comply with the written notice provision of the contract precludes recovery. Although it is undisputed that plaintiff did not give such notice, it urges that defendant repeatedly and deliberately ignored and, therefore, waived the contractual notice requirement and, further, that defendant's field representative stated that any claim for delay damages should be submitted, along with all other claims, at the end of the project. According to plaintiff, it was the established practice between the parties to bypass the strict mandates of the contract by not making notice of each item causing delay.

In denying defendant's motion to dismiss plaintiff's first cause of action for delay costs, the Supreme Court found a triable question of fact to exist concerning whether defendant waived reliance upon the applicable clause of the contract since "[t]he facts as alleged by plaintiff would indicate that the TBTA, through its on-site agents, was thoroughly aware of the conditions causing the delays and the effect of those delays on the progress schedule. The alleged breakdown and aban-

donment of the progress schedule would obviate the need to apprise the TBTA of the expected effect the delays would have upon it." Moreover, the court observed, "if a party induces another's reliance on an oral modification, it may be estopped from invoking a provision precluding oral modifications". However, the court did not take proper account of the clear and unambiguous terms of the subject agreement. In that regard, the relevant sections of the contract provide as follows:

"Article 11. Notice of Conditions Causing Delay. Within ten (10) days after the commencement of any condition which is causing or may cause delay in completion, including conditions for which the Contractor may be entitled to an extension of time, the Contractor must notify the Engineer in writing of the effect, if any, of such condition upon the previously approved progress schedule, and must state why and in what respects, if any, the condition is causing or may cause such delay.

"Failure strictly to comply with this requirement may, in the discretion of the Executive Officer and Chief Engineer or an Assistant Secretary of the Authority, be deemed sufficient cause to deny any extension of time on account of delay in completion arising out of or resulting from such change, extra work, suspension, or other condition. Such failure shall also constitute a waiver, by the Contractor, of any and all claims for damages for delay arising therefrom.

"If and when appropriate, the progress schedule shall be revised by the Contractor as and when directed by the Engineer, and when approved by the Engineer, the revised schedule must be strictly adhered to by the Contractor."

"Article 40. Final Payment.* * *

"Verified Statement of Claims. The contractor must also submit with the final requisition a final verified statement of any and all alleged claims against the Authority, the City and the Metropolitan Transportation Authority, in any way connected with or arising out of this Contract (including those as to which details may have been furnished pursuant to Articles 27 and 28 hereof) setting forth with respect to each such claim the total amount thereof, the various items of labor and materials included therein, and the alleged value of each such item; and if the alleged claim to be one for delay, the alleged cause of each such delay, the period or periods of time, giving the dates, when the Contractor claims the performance of the Work, or a particular part thereof, was delayed, and an

itemized statement and breakdown of the amount claimed for each such delay."

"Article 31. No Estoppel. Neither the Authority nor any officer, agent or employee thereof, shall be bound, precluded or estopped by any determination, decision, approval, order, letter, payment or certificate made or given under or in connection with this Contract by the Authority, the Engineer, or any other officer, agent or employee either before or after completion and final acceptance of the Work and payment therefor: (1) from showing the true and correct classification, amount, quality or character of the work actually done; or that any such determination, decision, order, letter, payment or certificate was untrue, incorrect or improperly made in any particular, or that the Work or any part thereof does not in fact conform to the requirements of this Contract; and (2) from demanding and recovering from the Contractor any overpayments made to him or such damages as it may sustain by reason of his failure to perform each and every part of this Contract in strict accordance with its terms, or both."

The courts, in construing similar contractual terms, have held that the purpose of compelling the contractor to furnish written notice and to prevent oral modification by any of defendant's agents or employees, assuming that this was the situation herein, "is to obviate any issue as to the credibility of either the contractor or the [agent] as to what was or what was not said by either of them" (*Albert Saggese, Inc. v Town of Hempstead,* 100 AD2d 885, 886, *mod on other grounds* 64 NY2d 908). Indeed, Article 31 expressly declares that defendant could not be estopped from enforcing its right based upon any action or representation by its agent or employee, and the dictates of the sort of provisions involved here have been regularly implemented (*see, American Std. v New York City Tr. Auth.,* 167 AD2d 494, *lv dismissed* 78 NY2d 908, *lv denied* 78 NY2d 860; *Buckley & Co. v City of New York,* 121 AD2d 933; *Naclerio Contr. Co. v Environmental Protection Admin.,* 113 AD2d 707, *appeal dismissed* 66 NY2d 915). In *Westinghouse Elec. Corp. v New York City Tr. Auth.* (735 F Supp 1205), the court specifically considered what a contractor must demonstrate in order to defeat a motion for summary judgment. Rejecting the contractor's attempt to create a waiver and, thus, a triable question of fact notwithstanding its lack of adherence to a contractual written notice mandate, the court stated (*supra,* at 1224) that: "New York case law recognizes that prompt, written notice requirements in public works contracts serve salutary purposes, *Naclerio Contracting v.*

*Environmental Protection Administration,* 113 A.D.2d 707, 493 N.Y.S.2d 159 (1st Dep't), *app. dismissed,* 66 N.Y.2d 915, 498 N.Y.S.2d 1027, 489 N.E.2d 773 (1985) (permitting public authorities to take early steps to avoid or mitigate damages and engage in contemporaneous record keeping), and merit strict enforcement. *Id.,* 493 N.Y.S.2d at 161 (absent 'strict compliance' with written disputed work notice provision, 'claims relating thereto are explicitly waived'); *Buckley & Co. v. City of New York,* 121 A.D.2d 933, 505 N.Y.S.2d 140 (1st Dep't 1986) (waiver where no compliance with City contract's daily record-keeping requirement). Although failure to give notice compliant in every technical respect has been excused on occasion, *see Whitmyer Brothers, Inc. v. State of New York,* 63 A.D.2d 103, 406 N.Y.S.2d 617 (3rd Dep't 1978); *Amadeus, Inc. v. State of New York,* 36 A.D.2d 873, 320 N.Y.S.2d 677 (3rd Dep't 1971), in such cases there is an extensive record of timely written correspondence between the contractor and agency addressing the disputed subject matter."

There is simply no record of correspondence here that could constitute a basis for avoiding summary dismissal. The fact that defendant may have permitted "extra work" claims pursuant to Article 25 does not preclude it from demanding compliance with Article 11 since the claims which the Authority is seeking to dismiss relate only to delay damages; the claims for extra work remain unafffected. To enable plaintiff to succeed in attempting to circumvent having to give written notice would eviscerate the viability of these clauses in public works projects, and none of the cases cited by plaintiff or relied upon by the Supreme Court compel such a result. Concur—Carro, J. P., Milonas, Rosenberger, Ross and Rubin, JJ.