******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# E. I. DU PONT DE NEMOURS AND COMPANY *v.*
# CHEMTURA CORPORATION
## (SC 20329)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

The plaintiff, D Co., sought, inter alia, to recover damages from the defendant for breach of contract in connection with D Co.'s purchase of the defendant's fluorine chemical business and related equipment. The parties had previously entered into an asset purchase agreement, governed by New York law, pursuant to which the defendant agreed to indemnify D Co. for any losses arising from a breach of the defendant's representations and warranties relating to prior and ongoing compliance with various laws in connection with the operation of the defendant's plant. The agreement's notice provision provided that notice and other communications under the agreement must be sent to the defendant's general counsel with a simultaneous copy to the defendant's outside counsel. Following the purchase of the business, D Co. requested reimbursement, pursuant to the agreement's indemnification provisions, to cure several alleged deficiencies, but the parties ultimately were unable to settle their differences. Thereafter, C Co. was substituted as the plaintiff. At trial, the defendant claimed that D Co. had failed to provide notice in accordance with the provisions of the agreement because D Co. had communicated with the defendant's associate general counsel but not the defendant's general counsel, and New York law required strict compliance with notice provisions in a commercial contract. C Co. claimed that New York law did not require strict compliance and that the communications between the parties to the agreement provided actual notice to the defendant. The trial court rendered judgment for the defendant, concluding, inter alia, that D Co. had failed to provide proper notice in accordance with the agreement, and C Co. appealed. *Held* that the trial court improperly rendered judgment for the defendant on the ground that D Co. had failed to strictly comply with the notice provision of the asset purchase agreement: although a time limitation provision in the agreement provided that the defendant would not be liable for a breach of representations or warranties "unless" D Co. notified the defendant of such a claim in writing within four years of the closing date, that provision merely set a time limitation for bringing a claim for indemnification, as it did not contain unmistakable language conditioning indemnification on compliance with precise notice procedures; moreover, New York law does not require strict compliance with a commercial contract's notice provision when the other party to the contract receives actual notice and is not prejudiced by the lack of strict compliance, and, although D Co. did not strictly comply with the agreement's notice provision, it was clear from the trial court's factual findings and the record, including testimony by D Co.'s plant manager that he had regularly discussed the deficiencies and corresponded with various employees of the defendant on the subject, e-mail correspondence between the parties, and a detailed claims list chart, prepared by the defendant's associate general counsel, summarizing the parties' positions on various deficiencies at the plant, that the defendant was aware that D Co. was seeking indemnification and, thus, had actual notice of D Co.'s claims, and the defendant did not claim that it was prejudiced as a result of D Co.'s failure to strictly comply with the notice provision.

Argued November 19, 2019—officially released July 2, 2020**

*Procedural History*

Action to recover damages for breach of contract, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where The Chemours Company FC, LLC, was substituted as the plaintiff;

thereafter, the case was tried to the court, *Brazzel-Massaro, J.*; judgment for the defendant, from which the substitute plaintiff appealed. *Reversed*; *further proceedings.*

*Proloy K. Das*, with whom were *Jennifer M. DelMonico* and, on the brief, *Terence J. Brunau*, for the appellant (substitute plaintiff).

*Thomas J. Donlon*, with whom, on the brief, were *Joseph L. Clasen* and *Brian J. Wheelin*, for the appellee (defendant).

*Opinion*

McDONALD, J. The principal issue in this appeal is whether New York law requires a party to strictly comply with a notice provision in a commercial contract in order to recover for the other party's breach of the contract. The trial court concluded that the plaintiff, E. I. du Pont de Nemours and Company (DuPont),[1] had not strictly complied with the notice provisions of an asset purchase agreement (APA) and rendered judgment in favor of the defendant, Chemtura Corporation. On appeal, the plaintiff contends that the trial court improperly required strict compliance with the APA's notice provisions because New York law distinguishes between public contracts and private commercial contracts, and does not require strict compliance in commercial contracts when the contracting party receives actual notice and suffers no prejudice from the deviation. We agree with the plaintiff and, accordingly, reverse the judgment of the trial court.

The record reveals the following relevant facts, as found by the trial court and supplemented by the record, and procedural history. In 2007, the parties, DuPont and the defendant, negotiated the purchase of the defendant's fluorine chemical business and related equipment located in El Dorado, Arkansas. On behalf of DuPont, Brian Engler negotiated the terms of the APA with Arthur Fullerton, the defendant's associate general counsel, and Arthur Wienslaw, the defendant's director of strategy and licensing. The parties ultimately entered into the APA on December 14, 2007. Because the parties were competitors in this field, DuPont's precontractual ability to inspect the defendant's plant and equipment and to conduct other due diligence was limited. Officials of DuPont conducted only one brief, after-hours tour of the plant prior to signing the APA. As a result, the defendant made certain representations and warranties in the APA, including that the transferred assets were in good repair and condition and were sufficient to conduct business as of the closing date, and that the business had been and was currently being operated in accordance with applicable laws.

To further protect DuPont, given its limited ability to inspect the plant, the parties also entered into a side letter dated January 31, 2008, which confirmed "additional understandings" of the parties. The side letter included the disclosure and discussion of all potential violations of codes and regulations that controlled the operation of the plant and its products, including potential violations of the ozone depleting substances regulations.[2] The side letter primarily addressed any past deficiencies or violations that continued to impact the operation of the plant at the time of closing that DuPont would not have been able to discover given its limited inspection of the plant. The parties closed on the sale on January 31, 2008.

The APA contains two provisions, §§ 3.16 and 3.17, that set forth a number of representations and warranties by the defendant related to the facility's prior and ongoing compliance with various laws in connection with the operation of the plant. Under article 8 of the APA, the defendant agreed to indemnify DuPont from any losses arising from any breach of those representations or warranties.[3] Section 8.4 (a) of the APA provides a four year time period for indemnification as a result of a breach of the representations or warranties contained in §§ 3.16 and 3.17 and requires that DuPont notify the defendant in writing within four years of the closing date, "specifying the amount and factual basis of that claim in reasonable detail to the extent known." The APA's notice provision, § 11.4, provides in relevant part: "All notices, consents, waivers and other communications under this [a]greement must be in writing and will be deemed given to a party when (a) delivered to the appropriate address by hand or by nationally recognized overnight courier service (costs prepaid), (b) sent by facsimile or e-mail with confirmation of transmission by the transmitting equipment or (c) received or rejected by the addressee, if sent by certified mail, return receipt requested, in each case to the following addresses, facsimile numbers or e-mail addresses and marked to the attention of the individual (by name or title) designated below (or to such other address, facsimile number, e-mail address or individual as a party may designate by notice to the other parties) . . . ." To properly notify the defendant, § 11.4 of the APA provides that the notice shall be sent to the defendant's general counsel "with a simultaneous copy" to the defendant's outside counsel, Baker & McKenzie, LLP.

Following the closing, the parties remained in regular contact because DuPont purchased only a portion of the Arkansas facility and the defendant continued to operate the remainder. Specifically, DuPont's plant manager, Donald Kuhlmann, communicated with Fullerton, the defendant's associate general counsel, and Frank DiCristina, one of the defendant's plant managers. DuPont did not communicate with the defendant's general counsel. DuPont subsequently discovered that certain areas of the plant required repair or replacement, and DuPont requested reimbursement pursuant to the defendant's indemnification obligations. Namely, DuPont asserted that certain refrigeration units were leaking refrigerant at an unacceptable rate, and the fire suppression systems were not operating within applicable laws at the time of the purchase. From the closing in 2008 until 2011, the parties held discussions and corresponded to resolve those deficiencies.[4] During this time, in March, 2009, the defendant filed for Chapter 11 bankruptcy. For the reorganized company to assume the APA, the defendant had to cure any prebankruptcy defaults under the APA. See 11 U.S.C. § 365 (b) (2006).

This led to extensive negotiations between the parties over "cure claims."[5] Ultimately, the parties summarized their positions on various items in a claims list, which included, among other things, the refrigeration and fire suppression system claims. These discussions did not resolve all of the claims, and the present action followed.

DuPont commenced this action in June, 2014, asserting two claims sounding in breach of contract against the defendant. The complaint alleged violations of the side letter and §§ 3.16 and 3.17 of the APA. DuPont alleged that, in accordance with the APA and the side letter, the defendant is obligated to repair or replace refrigeration units that either are not properly working or violate applicable regulations, as well as certain fire suppression systems that did not comply with the applicable laws at the time of the sale. Specifically, in count one, DuPont alleged that the defendant breached the APA because, at the time of closing, the defendant had been operating nine areas of the plant in violation of applicable fire safety laws and regulations. Count two alleged that multiple refrigeration units were leaking refrigerant at rates impermissible under applicable environmental law.

After three and one-half years of pretrial litigation, the case was tried in January, 2018. On the last day of trial, the defendant claimed—for the first time, in a motion for a directed verdict—that DuPont failed to provide notice in accordance with the terms of the APA. The defendant argued that DuPont did not comply with the APA's notice provision because it had been communicating with the defendant's associate general counsel rather than the general counsel. The court requested briefing on the issue, and the plaintiff and the defendant submitted posttrial briefs. The plaintiff and the defendant agreed that, under § 11.16 of the APA, New York law governs this dispute. The defendant argued that New York law requires strict compliance with notice provisions in a contract and that the plaintiff failed to prove all the elements of breach of contract. The plaintiff disagreed and argued that New York law did not require strict compliance, and that the claims list and the correspondence between the parties to the APA satisfied New York law because they provided the defendant actual notice.

The trial court determined that at no time after the closing did DuPont provide notice in accordance with § 11.4 of the APA. The court noted that a number of the plaintiff's exhibits submitted as proof of actual notice did not rise to the level of actual notice of a violation of the contract purchase provisions. The court relied on a New York intermediate appellate court decision, *Fortune Limousine Service, Inc.* v. *Nextel Communications*, 35 App. Div. 3d 350, 826 N.Y.S.2d 392 (2006), appeal denied, 8 N.Y.3d 816, 870 N.E.2d 695, 839

N.Y.S.2d 454 (2007), for the proposition that, when there is a denial of actual notice, the plaintiff must present some evidence of notice. In the present case, the court explained, the plaintiff described an ongoing discussion over a period of years, but at no point "ha[d] the plaintiff been able to demonstrate that the defendant was notified within the applicable four year period that [DuPont] alleged a breach of the provisions of § 3.16 or § 3.17 [of the APA]." The court rejected the plaintiff's contention that the defendant had actual notice of the claims based on various correspondence, namely, the claims list, because these documents were "only discussion for purposes of reimbursement of items pursuant to the [APA]." The court further explained that, based on the claims list, the defendant had determined that DuPont's claim was not valid, and, if it chose to pursue the claim, DuPont was "obligated to follow the contract, which means the notice and the § 8.4 time limitations, as well as the specificity of such a claim." Finally, the court stated that, "[w]ithout a written notice outlining the basis of the defendant's noncompliance, the defendant is prejudiced in that [it] need[s] to determine [whether] the problem is some undisclosed violation or simply the passage of time that has affected the operation of the facility in accordance with the regulations and permits." The trial court concluded that DuPont failed to provide proper and timely notice in accordance with §§ 8.4 and 11.4 of the APA and rendered judgment in favor of the defendant. The court did not reach the defendant's arguments that the plaintiff failed to prove the other elements of breach of contract.

The plaintiff appealed from the judgment of the trial court to the Appellate Court, and the appeal was transferred to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the plaintiff contends that the trial court incorrectly concluded that New York law requires strict compliance with a notice provision in a commercial contract. In support, the plaintiff asserts that the APA's notice provision is not a condition precedent to indemnification. The plaintiff also asserts that New York case law draws a distinction between public contracts and commercial contracts, and that strict compliance with contractual notice provisions is not required in commercial contracts when the contracting party receives actual notice and suffers no detriment or prejudice by the deviation. Finally, the plaintiff asserts that the defendant's notice claims are barred by estoppel and waiver.

The defendant disagrees and contends that the trial court correctly concluded that lack of notice barred the plaintiff's claims. It asserts that New York courts rigorously enforce provisions in contracts between sophisticated parties, and the notice provision in the APA is a condition precedent to indemnification. The

defendant also rejects the plaintiff's distinction between public and commercial contracts and argues that assertions of actual knowledge are insufficient to satisfy a notice provision under New York law. The defendant also argues that neither estoppel nor waiver applies in this case. Finally, the defendant contends that the plaintiff did not prove other elements of its breach of contract claims.

Whether the trial court correctly concluded that New York law requires strict compliance with a notice provision in a commercial contract is a question of law subject to our plenary review. See, e.g., *Hartford Courant Co.* v. *Freedom of Information Commission*, 261 Conn. 86, 96–97, 801 A.2d 759 (2002) (determination of proper legal standard is question of law subject to plenary review); see also 11 R. Lord, Williston on Contracts (4th Ed. 1999) § 30:6, pp. 77–80 ("[t]he interpretation and construction of a written contract present only questions of law, within the province of the court . . . so long as the contract is unambiguous and the intent of the parties can be determined from the agreement's face" (footnotes omitted)). Because § 11.16 provides that the APA will be governed by and construed under the laws of New York, we look to the decisions of New York's appellate courts to resolve this issue.

## I

We begin with the plaintiff's contention that the APA's notice provision is not a condition precedent to indemnification. As the New York Court of Appeals has explained, a condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises . . . ." (Citations omitted; internal quotation marks omitted.) *Oppenheimer & Co.* v. *Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690, 660 N.E.2d 415, 636 N.Y.S.2d 734 (1995). New York courts distinguish between express and constructive conditions. "Express conditions must be literally performed, whereas constructive conditions, which ordinarily arise from language of promise, are subject to the precept that substantial compliance is sufficient." Id. One New York intermediate appellate court has explained that "[i]t must clearly appear from the agreement itself that the parties intended a provision to operate as a condition precedent . . . ." (Citation omitted; internal quotation marks omitted.) *Ashkenazi* v. *Kent South Associates, LLC*, 51 App. Div. 3d 611, 611, 857 N.Y.S.2d 693 (2008). In determining whether a particular agreement makes an event an express or constructive condition, "courts will interpret doubtful language as embodying a promise or constructive condition rather than an express condition. This interpretive preference is especially strong when a finding of express condition would increase the risk of forfeiture[6] by the obligee . . . ." (Citation omitted; footnote added.) *Oppenhei-*

*mer & Co.* v. *Oppenheim, Appel, Dixon & Co.*, supra, 691. Even express conditions may "yet be excused by waiver, breach or forfeiture. The Restatement [(Second) of Contracts] posits that '[t]o the extent that the [nonoccurrence] of a condition would cause disproportionate forfeiture, a court may excuse the [nonoccurrence] of that condition unless its occurrence was a material part of the agreed exchange' . . . ." (Citation omitted.) Id., quoting 2 Restatement (Second), Contracts § 229, p. 185 (1981); see also *Schweizer* v. *Sikorsky Aircraft Corp.*, 634 Fed. Appx. 827, 829 (2d Cir. 2015) (same).

New York courts look for "unmistakable language of condition," such as "if" and "unless and until," to establish a condition precedent. (Internal quotation marks omitted.) *MHR Capital Partners LP* v. *Presstek, Inc.*, 12 N.Y.3d 640, 645, 912 N.E.2d 43, 884 N.Y.S.2d 211 (2009). For example, the New York Court of Appeals has held that a contract provision that provided that documents were not to be released " 'unless and until' " one party consented to the deal was an express condition precedent. Id., 645–46; see also *Kingsley Arms, Inc.* v. *Sano Rubin Construction Co.*, 16 App. Div. 3d 813, 814, 791 N.Y.S.2d 196 (2005) (contract that stated "no claim can be asserted unless, 'as a condition precedent thereto,' the notice of claim provisions are complied with" was express condition precedent). Similar to the present case, however, the Fifth Circuit, applying New York law, rejected an argument that a contractual notice provision, which provided that one party " 'will have the right to terminate the [a]greement on sixty (60) days prior written notice,' " was an express condition precedent, even when considered with another provision that included "unless" language. *DuVal Wiedmann, LLC* v. *InfoRocket.com, Inc.*, 620 F.3d 496, 501–502 (5th Cir. 2010).

Here, the defendant claims that the word "unless" in § 8.4 of the APA creates an express condition precedent regarding the precise form of notice. Section 8.4 (a) provides that the defendant will have no liability for breaches of the representations or warranties contained in § 3.16 or § 3.17 "unless on or before the four year anniversary of the [c]losing [d]ate, [DuPont] notifies [the defendant] of such a claim in writing specifying the amount and factual basis of that claim in reasonable detail to the extent known." In short, § 8.4—a provision titled "TIME LIMITATIONS"—sets a four year time limitation for bringing a claim for indemnification under § 3.16 or § 3.17; it does not provide the specific requirements for the notice, which are set forth in § 11.4.[7] Indeed, § 8.4 does not even reference § 11.4. Although § 8.4 contains the word "unless," there is no "unmistakable" language conditioning indemnification on compliance with precise notice procedures. Rather, § 8.4 is more properly understood as setting the time limitation for asserting a claim for indemnification. The notice

provision, § 11.4, does not contain any conditional language. Therefore, it is not clearly apparent from the language in the APA that the notice provision in § 11.4 is an express condition precedent based solely on the word "unless" in § 8.4. See *DuVal Wiedmann, LLC* v. *InfoRocket.com, Inc.*, supra, 620 F.3d 501–502. Moreover, given that New York courts will "interpret doubtful language as embodying a promise or constructive condition rather than an express condition"; *Oppenheimer & Co.* v. *Oppenheim, Appel, Dixon & Co.*, supra, 86 N.Y.2d 691; even if there is ambiguity as to whether the notice provision was an express condition precedent, New York law favors construing it as a constructive condition for which substantial compliance is sufficient. See id., 690–91.

## II

Having concluded that the notice provision in the APA is not an express condition precedent, we must determine whether New York law nevertheless requires strict compliance with the contract's notice provision under the circumstances of this case. We conclude that New York law does not require strict compliance with a commercial contract's notice provision when the other party to the contract receives actual notice and is not prejudiced by the deviation.

As a general matter, the New York Court of Appeals has noted the importance of compliance with contractual provisions. For example, the court has stated that "[c]ourts will give effect to the contract's language and the parties must live with the consequences of their agreement. If they are dissatisfied . . . the time to say so [is] at the bargaining table . . . ." (Citations omitted; internal quotation marks omitted.) *Eujoy Realty Corp.* v. *Van Wagner Communications, LLC*, 22 N.Y.3d 413, 424, 4 N.E.3d 336, 981 N.Y.S.2d 326 (2013). New York courts respect the freedom of contract, especially "in the case of arm's length commercial contracts negotiated by sophisticated and counseled entities . . . ." (Citation omitted.) Id. Additionally, the Court of Appeals has explained that "[i]t is settled . . . that when a contract requires that written notice be given within a specified time, the notice is ineffective unless the writing is actually received within the time prescribed . . . ." (Citations omitted.) *Maxton Builders, Inc.* v. *Lo Galbo*, 68 N.Y.2d 373, 378, 502 N.E.2d 184, 509 N.Y.S.2d 507 (1986).

The New York Court of Appeals has not squarely addressed the question of whether New York law requires strict compliance with a notice provision in a commercial contract between private entities. In *A.H.A. General Construction, Inc.* v. *New York City Housing Authority*, 92 N.Y.2d 20, 699 N.E.2d 368, 677 N.Y.S.2d 9 (1998), the court required strict compliance with a notice provision of a *public* contract between the New York City Housing Authority and a contractor for the

construction of several public buildings and other public works. Id., 24. The court noted that the contractor undeniably failed to satisfy the notice provisions of the contract, which were conditions precedent to recovery, and nothing the housing authority did prevented the contractor from complying with those provisions. Id., 30–33. As such, the court held that the housing authority's summary judgment motion should have been granted because the contractor did not comply with the contract's notice provisions. Id., 23–24, 34.

Significantly, the court explained that important public policy considerations favor scrutiny of claims of bad faith, when offered by contractors to excuse noncompliance with notice and reporting requirements in public contracts. Id., 33. The court emphasized that notice provisions are common in public works projects and "provide public agencies with timely notice of deviations from budgeted expenditures or of any supposed malfeasance, and allow them to take early steps to avoid extra or unnecessary expense . . . mitigate damages and avoid the waste of public funds." Id., 33–34. Finally, the court noted that the contractor's accumulation of additional expenses was "precisely the situation" that the notice provisions were intended to prevent. Id., 34.

Although the New York Court of Appeals did not expressly limit its holding in that case to public contracts, several New York intermediate appellate court decisions have implicitly drawn the distinction between public and private commercial contracts.[8] For example, the New York Supreme Court, Appellate Division, has explained that "New York case law recognizes that prompt, written notice requirements in *public works contracts* serve salutary purposes . . . and merit *strict enforcement.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Huff Enterprises, Inc.* v. *Triborough Bridge & Tunnel Authority*, 191 App. Div. 2d 314, 316–17, 595 N.Y.S.2d 178, appeal denied, 82 N.Y.2d 655, 622 N.E.2d 305, 602 N.Y.S.2d 804 (1993). In the context of private commercial contracts, however, New York's intermediate appellate courts have explained that "strict compliance with contractual notice provisions need not be enforced where the adversary party does not claim the absence of actual notice or prejudice by the deviation . . . ." (Citations omitted.) *Fortune Limousine Service, Inc.* v. *Nextel Communications*, supra, 35 App. Div. 3d 353; see also *Suarez* v. *Ingalls*, 282 App. Div. 2d 599, 600, 723 N.Y.S.2d 380 (2001); *Baker* v. *Norman*, 226 App. Div. 2d 301, 304, 643 N.Y.S.2d 30, appeal dismissed, 88 N.Y.2d 1040, 673 N.E.2d 1240, 651 N.Y.S.2d 13 (1996); *Dellicarri* v. *Hirschfeld*, 210 App. Div. 2d 584, 585, 619 N.Y.S.2d 816 (1994).[9] Relevant to the present case, in which DuPont communicated with the defendant's associate general counsel and not the general counsel, in *Iskalo Electric Tower LLC* v. *Stantec Consulting Services, Inc.*, 79 App. Div. 3d 1605, 916 N.Y.S.2d 373 (2010), the intermediate

appellate court explained that, "[a]lthough . . . [the] plaintiffs provided such notice by facsimile transmission to [the] defendant's corporate counsel and did not provide such notice to [the] defendant's chief executive officer, we nevertheless conclude that strict compliance with the notice provision of the lease was not required inasmuch as [the] defendant does not contend that it did not receive actual notice . . . [or] that it was prejudiced by the deviation . . . ." (Citations omitted.) Id., 1607.[10]

Finally, we note that several federal courts, applying New York law, have also concluded that strict compliance with a notice provision in a private commercial contract is not required. For example, the Second Circuit has opined that, "[u]nder New York law, strict compliance with contractual notice provisions need not be enforced where the adversary party does not claim the absence of actual notice or prejudice by the deviation."[11] (Internal quotation marks omitted.) *Schweizer* v. *Sikorsky Aircraft Corp.*, supra, 634 Fed. Appx. 829; see also *Thor 725 8th Avenue LLC* v. *Goonetilleke*, 138 F. Supp. 3d 497, 509 (S.D.N.Y. 2015), aff'd, 675 Fed. Appx. 31 (2d Cir. 2017). The United States District Court for the District of Columbia has explained that, "[u]nder New York law, strict compliance with written notice provisions is required for public contracts, with limited exceptions. . . . But because the contract at issue in this action is a commercial agreement between two sophisticated, private parties, the rigid [strict construction] rule [the defendant] incorrectly argues for clearly does not apply." (Citation omitted.) *Intelsat USA Sales LLC* v. *Juch-Tech, Inc.*, 52 F. Supp. 3d 52, 60 n.6 (D.D.C. 2014).

In short, the majority of New York intermediate appellate court opinions have concluded that strict compliance with a notice provision in a private commercial contract is not required. See, e.g., *Iskalo Electric Tower LLC* v. *Stantec Consulting Services, Inc.*, supra, 79 App. Div. 3d 1607; *Fortune Limousine Service, Inc.* v. *Nextel Communications*, supra, 35 App. Div. 3d 353; *Suarez* v. *Ingalls*, supra, 282 App. Div. 2d 600; *Baker* v. *Norman*, supra, 226 App. Div. 2d 304; *Dellicarri* v. *Hirschfeld*, supra, 210 App. Div. 2d 585. Moreover, the most analogous Court of Appeals decision, which required strict compliance with a notice provision in a public contract, concluded that the notice provision was a condition precedent and emphasized that public policy considerations favored requiring strict compliance because public contract notice provisions were designed to prevent the accumulation of additional expenses and to avoid the waste of public funds. See *A.H.A. General Construction, Inc.* v. *New York City Housing Authority*, supra, 92 N.Y.2d 33–34. These concerns are not implicated in commercial contracts between private parties. As such, we conclude that New York law does not require strict compliance with a

commercial contract's notice provision when the adversary party receives actual notice and is not prejudiced by the deviation.[12]

### III

Turning to the facts of the present case, we note that the plaintiff acknowledges that DuPont did not strictly comply with the APA's notice provisions but contends that the defendant received actual notice that DuPont was seeking reimbursement under the APA and the side letter in connection with the refrigeration units and fire suppression systems. Specifically, the plaintiff notes that Kuhlmann engaged in regular discussions and correspondence regarding these claims with the defendant's employees, including Fullerton and DiCristina. The plaintiff also points to the claims list and a series of e-mail correspondence between the parties to the APA that it asserts memorialize the parties' communications regarding plant deficiencies involving the refrigeration units and fire suppression systems. The defendant argues that none of the correspondence between the parties to the APA formally states that it is a notice of a claim for indemnification or breach, none was sent to the contractually specified individuals designated to receive notice, and none contains the information required by § 8.8 of the APA. The defendant does not claim that it was prejudiced as a result of DuPont's failure to strictly comply with the notice provision.

The trial court's factual findings and the record make clear that the defendant—through its associate general counsel and plant manager—was aware that DuPont was seeking indemnification for the refrigeration and fire protection systems. Specifically, Kuhlmann testified that he engaged in regular discussions and correspondence with various employees of the defendant, including Fullerton and DiCristina, regarding the deficiencies at the plant. Additionally, various e-mail correspondence memorialize the parties' communications regarding the fire safety equipment and refrigeration units. The record contains at least four groups of e-mail correspondence between the parties over a three year period discussing the following: problems with the refrigeration and fire protection systems; estimates for repair of that equipment; and requests by DuPont for reimbursement from the defendant.

Moreover, after the defendant filed for bankruptcy, Fullerton created a detailed claims list chart that summarized the parties' positions on various deficiencies at the plant, which confirmed that the defendant had actual knowledge of DuPont's claims. As previously discussed, for the reorganized company to assume the APA, the defendant had to cure any defaults. This led to extensive negotiations between the parties over "cure claims," which Fullerton described: "assuming there is a tie-in to a reimbursement obligation under the [APA], has work been done for which either (a) an invoice has

been generated and sent to [the defendant] or (b) the issuance of an invoice to [the defendant] is a [pro forma] step at this point [because] the amount that would appear on the invoice is [un]known? . . . [T]he fact that something may not be in the 'cure claim' category does not mean it never gets paid; it just means that the claim is handled per the [APA] terms as if there had never been a [Chapter] 11 filing." (Emphasis omitted.)

The claims list included the refrigeration and fire protection claims, in addition to other claims for which DuPont requested reimbursement pursuant to the APA and the side letter.[13] Item 9, which was related to the fire protection equipment, provided: "General agreement that, regardless of how this item might be tied to obligations under the contract, no work has been done to date and it is therefore not possible to establish an amount that could be considered a 'cure claim' amount. Accordingly, this item should be taken off the 'cure claim' list." The estimated cost of the work was listed as $1.6 million. Similarly, item 12, which was related to the refrigeration equipment, provided: "*General agreement that this item is grounded in the contract ([c]losing [s]ide [l]etter references to '[p]otential [ozone depleting substances regulations] [v]iolations')*, and that there is likely disagreement as to the nature, scope and extent of work required, but that a minimal amount of work has been done to date. . . . [T]here is no agreement on this point, and the parties desire to handle this item by: (a) not deeming the work done to date as giving rise to a 'cure claim' and (b) preserving the right of DuPont to seek reimbursement for this item (including as to any work performed as of the current date) from [the defendant] under the terms of the contract, and (c) preserving the right of [the defendant] to invoke its rights under the contract as well. In other words, both parties will reserve all rights they have under the contract, including as applied to any work that may have been performed as of the current date. On that basis, this item should be taken off the 'cure claim' list." (Emphasis added.) The estimated cost of the claim was listed as $250,000.

Based on the foregoing, we agree with the trial court and the defendant that DuPont did not strictly comply with the APA's notice provisions. DuPont did not send notice to the defendant's general counsel and Baker & McKenzie, LLP, as required by § 11.4, and, in the various correspondence between the parties, DuPont did not reference under which sections of the APA it was seeking indemnification, as required by § 8.8. As the trial court noted, "at no point has the plaintiff been able to demonstrate that the defendant was notified within the applicable four year period that [DuPont] alleged a breach of the provisions of § 3.16 or § 3.17 [of the APA]." Strict compliance, however, was not required because the defendant was aware that DuPont was seeking indemnification for the refrigeration and fire protection

systems, and the defendant does not claim that it was prejudiced by the deviation. The various correspondence took place over the course of several years, as part of the ongoing business relationship between the parties, and included descriptions of the deficiencies with the equipment, as well as cost information then available to DuPont. These claims were brought to the defendant's attention within four years of the closing date.

The defendant contends that the trial court not only concluded that DuPont failed to strictly comply with the notice provision but also found that DuPont failed to provide actual notice. The plaintiff argues that the trial court applied the wrong legal standard and incorrectly concluded that DuPont did not provide actual notice based on its failure to provide notice in accordance with the terms of the APA. We agree with the plaintiff.

Throughout the trial court's memorandum of decision, the court equates actual notice with strict compliance with the contractual notice provisions of the APA. For example, the court stated that, "at no time after the closing on January 31, 2008, was a notice provided *in accordance with § 11.4* . . . ." (Emphasis added.) The trial court also rejected the plaintiff's contention that the claims list provided the defendant with actual notice of the claims because the "document clearly conveys that the defendant has determined that the claim of [DuPont] is not valid, and, if [DuPont] [chooses] to pursue [the claim, DuPont is] obligated to follow the contract . . . ." Because strict compliance was not required, DuPont did not have to strictly "follow the contract" to provide notice. Additionally, if the defendant determined that DuPont's claims were not valid, then it necessarily had actual notice of those claims. Finally, the trial court concluded that "[t]he interplay of these contracts, [the] side letter and site services created a complicated process for the parties to address. The list of items to be assessed was extensive. This is precisely why the notice provisions, [which] requir[e] the writing [of notice] . . . to specific individuals and . . . that the writing outline the 'factual basis of the claim in reasonable detail,' *require strict compliance with the notice criteria.*" (Emphasis added.) As such, to the extent that the trial court purports to conclude that DuPont failed to provide actual notice to the defendant, it applied the wrong legal standard and improperly limited actual notice to the technical notice requirements of the APA.

For the reasons previously discussed, applying the proper legal standard to the undisputed facts found by the trial court, we conclude that there is ample evidence in the record to establish that the defendant had actual notice of the claims. See, e.g., *State* v. *Donald*, 325 Conn. 346, 354, 157 A.3d 1134 (2017) ("[w]hen the facts

underlying a claim on appeal are not in dispute . . . that claim is subject to de novo review" (internal quotation marks omitted)); *Tuxis-Ohr's, Inc.* v. *Gherlone*, 76 Conn. App. 34, 39, 818 A.2d 799 (In contract cases, "[t]he trial court's legal conclusions are subject to plenary review. [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.)), cert. denied, 264 Conn. 907, 826 A.2d 179 (2003).

Significantly, the defendant does not contend that it was prejudiced in any way as a result of DuPont's failure to strictly comply with the APA's notice provision. We acknowledge that the trial court stated that, "[w]ithout a written notice outlining the basis of the defendant's noncompliance, the defendant is prejudiced in that [it] need[s] to determine [whether] the problem is some undisclosed violation or simply the passage of time that has affected the operation of the facility in accordance with the regulations and permits." The trial court, however, did not properly evaluate prejudice because it did not determine that there was prejudice to the defendant as required by New York law. Rather, the trial court appears to conclude that there is prejudice to the evaluation of the case. There is no question that, within four years of the closing, the defendant was aware of the various issues at the plant, including the problems with the refrigeration and fire suppression systems, and that the parties were reaching agreement on certain claims, such as the national electric code claim. See footnote 13 of this opinion. Given the absence of any argument by the defendant that it was prejudiced by the deviation, DuPont was not required to strictly comply with the notice provision.

Because New York law does not require strict compliance with a notice provision in a commercial contract, the trial court improperly rendered judgment in favor of the defendant on the basis that DuPont failed to strictly comply with the notice provision of the APA.[14] See, e.g., *Iskalo Electric Tower LLC* v. *Stantec Consulting Services, Inc.*, supra, 79 App. Div. 3d 1607 (notice provided by facsimile only to defendant's corporate counsel was effective even though contract required notice to defendant's chief executive officer); *Suarez* v. *Ingalls*, supra, 282 App. Div. 2d 599–600 (notice was effective, even though it was not sent by certified mail, as required by contract, because plaintiff received actual notice); *Huff Enterprises, Inc.* v. *Triborough Bridge & Tunnel Authority*, supra, 191 App. Div. 2d 317 (even in context of public contracts, "failure to give notice compliant in every technical respect has been excused on occasion . . . when there is an extensive record of timely written correspondence between the contractor and agency addressing the disputed subject matter" (citations omitted; internal quota-

tion marks omitted)); *Whitmyer Bros., Inc.* v. *New York*, 63 App. Div. 2d 103, 107, 406 N.Y.S.2d 617 (1978) ("in cases [in which] the [s]tate is apprised of the contractor's claim that extra work beyond the contract was being performed, the [s]tate has been precluded from insisting [on] strict compliance with the notice provisions" (internal quotation marks omitted)), aff'd, 47 N.Y.2d 960, 393 N.E.2d 1027, 419 N.Y.S.2d 954 (1979).

Given that the trial court required strict compliance with the APA's notice provision and failed to make any other factual findings regarding the plaintiff's breach of contract claims, we decline to address the defendant's remaining contention that the plaintiff failed to prove the other elements of its breach of contract claim. See, e.g., *St. Joseph's Living Center, Inc.* v. *Windham*, 290 Conn. 695, 766–67, 966 A.2d 188 (2009) (*Schaller, J.*, concurring in part and dissenting in part) (when trial court did not make factual findings, "the appropriate remedy is to remand the case to the trial court for further proceedings"); see also *Deroy* v. *Estate of Baron*, 136 Conn. App. 123, 127, 43 A.3d 759 (2012) ("[w]hen an incorrect legal standard is applied, the appropriate remedy is to reverse the judgment of the trial court and to remand the matter for further proceedings").

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Robinson and Justices Palmer, McDonald, D'Auria, Mullins, Kahn and Ecker. Although Chief Justice Robinson was not present when the case was argued before the court, he has read the briefs and appendices and listened to a recording of the oral argument prior to participating in this decision.

** July 2, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] DuPont was the original plaintiff in this action. Shortly before trial, The Chemours Company, FC, LLC, was substituted as the sole plaintiff. We hereinafter refer to the substitute plaintiff as the plaintiff throughout this opinion.

[2] The ozone depleting substances regulations regulate the leakage rates of ozone depleting substances, such as chemicals used in industrial process refrigeration equipment. See 40 C.F.R. § 82.156 (2019).

[3] Specifically, § 8.8 of the APA provides: "A claim for indemnification for any matter not involving a third-party claim may be asserted by notice to the party obligated to indemnify under this [a]greement. Such notice must be provided by the [i]ndemnified [p]erson to the [i]ndemnifying [p]erson promptly in writing describing the [l]oss incurred by the [i]ndemnified [p]erson, the amount or estimated amount thereof, if known or reasonably capable of estimation, and the method of computation of such [l]oss, all with reasonable specificity and containing a reference to the provisions of this [a]greement in respect of which such [l]oss will have occurred."

[4] Specifically, in 2008, a site wide survey of the facility was completed, addressing various compliance issues. A copy of the audit report was forwarded to DiCristina. The report stated that the purpose was to "inform [the defendant] of [a] preliminary estimate of expenses which DuPont plans to incur between now and the end of 2009, which will be invoiced to [the defendant] per the [APA] and the January 31, 2008 [s]ide [l]etter . . . ." (Internal quotation marks omitted.) In August, 2008, Kuhlmann and James Scroggins, one of the defendant's plant managers, also communicated about

the refrigeration units. In September, 2008, correspondence between DuPont and the defendant outlined the scope of work required for the refrigeration units. Throughout 2009 and 2010, the parties continued to exchange e-mails and other correspondence about expenditures reimbursable to DuPont.

[5] In an e-mail to DiCristina and Kuhlmann, Fullerton explained what the term "cure claim" meant in the claims list he created: "I've tried to . . . use the following criteria for putting something in the 'cure claim' category for purposes of resolving this: assuming there is a tie-in to a reimbursement obligation under the [APA], has work been done for which either (a) an invoice has been generated and sent to [the defendant] or (b) the issuance of an invoice to [the defendant] is a [pro forma] step at this point [because] the amount that would appear on the invoice is [un]known? . . . [T]he fact that something may not be in the 'cure claim' category does not mean it never gets paid; it just means that the claim is handled per the [APA] terms as if there had never been a [Chapter] 11 filing." (Emphasis omitted.)

[6] "Forfeiture" is defined as "the denial of compensation that results when the obligee loses [its] right to the agreed exchange after [it] has relied substantially, as by preparation or performance on the expectation of that exchange . . . ." (Citation omitted; internal quotation marks omitted.) *Oppenheimer & Co.* v. *Oppenheim, Appel, Dixon & Co.*, supra, 86 N.Y.2d 692 n.2, quoting 2 Restatement (Second), Contracts § 229, comment (b), p. 185 (1981).

[7] Section 8.8, titled "PROCEDURE FOR INDEMNIFICATION—OTHER CLAIMS," also sets forth information to include in the notice. There is no language in § 8.8 that suggests it is a condition precedent to indemnification, and the defendant does not contend otherwise.

[8] This court has similarly drawn a distinction between public and private contracts and imposed special requirements for enforcing contracts involving public funds. See, e.g., *State* v. *Lombardo Bros. Mason Contractors, Inc.*, 307 Conn. 412, 440–41, 54 A.3d 1005 (2012) (state's ability to sue for breach of construction contract was not barred by contractual limitations period); *C.R. Klewin Northeast, LLC* v. *Fleming*, 284 Conn. 250, 253, 932 A.2d 1053 (2007) (sovereign immunity barred enforcement of public works contract that had not followed statutory procedure).

[9] Trial courts in New York have similarly drawn such a distinction between public and private commercial contracts when construing notice provisions. See, e.g., *J.C. Studios, LLC* v. *TeleNext Media, Inc.*, Docket No. 30606/10, 2011 WL 2651857, *7 (N.Y. Sup. July 6, 2011) ("[s]trict compliance with contract notice provisions is not required in commercial contracts when the contracting party receives actual notice and suffers no detriment or prejudice by the deviation") (decision without published opinion, 32 Misc. 3d 1211 (A), 932 N.Y.S.2d 760 (2011)).

[10] We acknowledge that at least two New York intermediate appellate court decisions have required strict compliance with notice provisions in a private contract. See, e.g., *AXA Mediterranean Holding, S.P.* v. *ING Ins. International, B.V.*, 106 App. Div. 3d 457, 457, 965 N.Y.S.2d 89 (2013) (contract provided claims for breach that expire after one year unless plaintiff provides defendant notice in accordance with notice provision of contract); *Morelli Masons, Inc.* v. *Peter Scalamandre & Sons, Inc.*, 294 App. Div. 2d 113, 113, 742 N.Y.S.2d 6 (2002) (although notice provision did not contain traditional conditional language, contract "specifically provided that the failure to comply with such provision would constitute a waiver of the subcontractor's claim for damages"). At least one of these cases, however, turned on the fact that the notice provision was an express condition precedent to indemnification. See *Morelli Masons, Inc.* v. *Peter Scalamandre & Sons, Inc.*, supra, 113. We decline to adopt the reasoning in these cases given that the majority of the New York intermediate appellate court decisions this court has reviewed did not require strict compliance in commercial contracts.

[11] Following oral argument, the defendant filed a notice of supplemental authorities pursuant to Practice Book § 67-10. The defendant cites two recent cases from the Second Circuit and the United States District Court for the Southern District of New York that it claims are relevant to the parties' contrary positions on the appropriate sources of New York law. During oral argument, the plaintiff argued that, in the absence of any recent New York Court of Appeals decision, this court should follow the Second Circuit's summary of New York law in *Schweizer*. The defendant contends that this court should follow the decisions of New York intermediate appellate courts. The supplemental authorities recognize that, in the absence of a Court of Appeals decision, courts rely on, among other things, New York intermediate

appellate court cases. See *Ray* v. *Ray*, 799 Fed. Appx. 29, 30 (2d Cir. 2020); *Fica Frio*, *Ltd.* v. *Seinfeld*, 434 F. Supp. 3d 80, 88 (S.D.N.Y. 2020). The plaintiff responded and argued that the defendant's letter was procedurally improper and that the supplemental authorities do not undermine *Schweizer*. The Second Circuit's statement of New York law in *Schweizer* is consistent with many of the decisions of the New York intermediate appellate courts. Moreover, the supplemental cases do not stand for the proposition that the court can look only to intermediate appellate court authority. See, e.g., *Fica Frio*, *Ltd.* v. *Seinfeld*, supra, 87 ("[b]ecause the New York Court of Appeals has not explicitly addressed this question, this [c]ourt must review available sources—including . . . state and federal case law—to predict how that court would resolve the issue").

[12] This conclusion is consistent with the decisions of New York's intermediate appellate courts, which hold that "a contract should not be interpreted to produce an absurd result, one that is commercially unreasonable, or one that is contrary to the intent of the parties . . . ." (Citation omitted.) *Cole* v. *Macklowe*, 99 App. Div. 3d 595, 596, 953 N.Y.S.2d 21 (2012). Moreover, if a contract interpretation "depends on formalistic literalism . . . ignores common sense, and could lead to absurd results that would leave [another portion of the contract] without meaning"; (citation omitted; internal quotation marks omitted) *Greenwich Capital Financial Products*, *Inc.* v. *Negrin*, 74 App. Div. 3d 413, 415, 903 N.Y.S.2d 346 (2010); the court may reject such a reading and adopt a construction that "produces a commercially reasonable and practical result . . . ." (Citation omitted.) Id. Here, the purpose of the representations and warranties and the side letter was to allow DuPont to submit claims for indemnification, given its limited ability to inspect the plant. It would be unreasonable to prevent the plaintiff from recovering despite the defendant's actual knowledge of the claims when it is not apparent from the APA that notice was an express condition precedent to indemnification and the defendant does not claim any prejudice from DuPont's failure to strictly comply with the notice provision.

[13] In addition to the refrigeration and fire protection claims, the claims list included claims for, among other things, "[national electric code] upgrades, pharma," for which the proposed resolution was: "General agreement that the [national electric code] items . . . *should all be viewed as grounded in the contract* (Closing Side Letter), and in principle considered part of a 'cure claim' . . . . [T]he parties will use their best effort to come up with a 'cure' amount for the [national electric code] work to date." (Emphasis added.) Thereafter, the defendant paid DuPont the amounts due under the APA and the side letter for the national electric code claims.

[14] Given our conclusion that the trial court improperly required strict compliance with the APA's notice provision, we need not address the plaintiff's contention that the defendant's notice claims are barred by estoppel and waiver.

_____