■ JONATHAN M. BAKER et al., Appellants, v JODY NORMAN et al., Respondents. [643 NYS2d 30] —Order and judgment (one paper), of the Supreme Court, New York County (Emily Jane Goodman, J.), entered October 16, 1995 which, *inter alia*, (1) declared plaintiffs in default under a contract to purchase real property, (2) denied plaintiffs' motion for an order directing defendants to turn over their down payment of $58,500 and, (3) granted defendants' crossmotion for summary judgment dismissing the complaint pursuant to CPLR 3212, unanimously reversed, to the extent appealed from, as limited by the briefs, on the law, without costs, (1) defendants' cross motion denied, judgment vacated and the counterclaims dismissed and, (2) plaintiffs' motion granted and defendants directed to turn over said down payment, together with accrued interest.

This case involves the proposed sale of a residential condominium unit located at 126 Waverly Place in the City and County of New York for a price of $585,000. The lending institutions to which plaintiffs, the prospective purchasers, applied for a mortgage loan assessed the premises at substantially less than the contract price, declining to provide financing in the amount plaintiffs sought on the ground of insufficient collateral.

On this appeal, defendant seller takes the position, based upon the Court of Appeals decision in *Maxton Bldrs. v Lo Galbo* (68 NY2d 373), that despite having written notice of plaintiffs' election to cancel the contract and despite receiving previous written communications putting her on notice of the insufficiency of the assessed value of the premises, she is nevertheless entitled to retain plaintiffs' down payment because notice was not given in the precise form designated in the contract.

The sales contract is in all respects typical, containing the familiar mortgage contingency clause. Insofar as pertinent, the provision states: "The obligations of the Purchaser hereunder are conditioned upon issuance on or before December 20, 1994 ('the Commitment Date') of a written commitment from any

Institutional Lender * * * of $438,750.00 or such lesser sum as Purchaser shall be willing to accept * * * If such commitment is not issued on or before the Commitment Date, then * * * Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, in which case this Contract shall be deemed canceled * * * If Purchaser fails to give Notice of Cancellation * * * then Purchaser shall be deemed to have waived Purchaser's right to cancel this Contract and to receive a refund of the downpayment by reason of the contingency contained in this para. 23." This paragraph also requires the purchasers to "make prompt application to an Institutional Lender for such mortgage loan".

Paragraph 14 of the contract requires notices to be sent either, a) "by registered or certified mail, return receipt requested, postage prepaid, or b) delivered in person by an overnight courier." The rider to the contract also contains a notice provision (paragraph 37). It states, "37.3 All copies shall be sent by certified or registered mail, return receipt requested or telecopier transmission."

The essential facts surrounding this aborted transaction are found in the documentary evidence and cannot be seriously disputed. It is apparent that the parties contemplated that a loan would be approved at 75% of the $585,000 selling price, viz., $438,750. Plaintiff purchasers applied for a loan in this amount to not one lender, as required by the contract, but two: Heritage Equity Corporation and Cosmopolitan Mortgage Corporation. On December 15, 1994, counsel for defendant seller received a facsimile transmission from the buyers' attorney, stating, "Essentially the appraisal issue has cropped up", and further advising that plaintiffs were unwilling to "put more cash in the deal." On that date, plaintiffs' attorney also sent, by facsimile, a copy of a letter from Heritage Equity Corporation, stating that the condominium unit had been appraised for only $550,000 and that, should their application be approved, plaintiffs would be offered a loan equal to just 70% of the appraised value. (The calculated amount of the loan would therefore be $385,000.) This was followed by a fax dated December 19 proposing that the seller reduce the selling price "in order to close with the current commitment." On December 20, the seller's attorney sent a communication to the purchasers' counsel, also by fax, stating, "At this stage we think it appropriate to wait for the second lending institution."

It appears that further negotiations were conducted directly between the parties in an attempt to renegotiate the transaction because, in a facsimile transmission of January 9, 1995,

the purchasers' attorney notes that the principals had spoken by telephone and "had not come to an agreement". The transmission further advises, "you can consider the contract cancelled. Please return the contract deposit with accrued interest as soon as possible." The record contains a "statement of credit denial" from Cosmopolitan Mortgage Corporation giving, as the reason, "Value Of Type of Collateral Not Sufficient". It seems that the attorneys spoke by telephone the same day because, on January 13, the seller's attorney confirmed the conversation, again by fax, and reiterated his opinion that "the Seller [sic] had not acted timely and had waived its [sic] right to cancel the contract of sale." This transmission also advises that, with respect to the return of the escrowed down payment, "the Seller has advised me of her objection to same at this point in time."

It is not disputed that these facsimile transmissions were received by counsel and, while the seller's attorney objects, without stating any basis, to the absence of a signature on some of the communications, there is no question of their authenticity. Each one is written on stationery bearing the letterhead of the respective attorney.

Defendant seller's retention of plaintiffs' down payment is predicated entirely upon the provisions of the written contract, without reference to the subsequent facsimile communications. She seeks to enforce the time limit contained in the printed contract requiring notice of cancellation to be given within "5 business days after the Commitment Date" of December 20, 1994. Defendant does not address the legal significance of her attorney's statement that "we think it appropriate to wait for the second lending institution." Nor does she attempt to demonstrate that it constitutes neither a waiver nor extension of the stated time limit.

It is settled that "a contracting party may orally waive enforcement of a contract term notwithstanding a provision to the contrary in the agreement" (*Bank Leumi Trust Co. v Block 3102 Corp.*, 180 AD2d 588, 590 [citing *Alside Aluminum Supply Co. v Berliner*, 32 AD2d 731], *lv denied* 80 NY2d 754; *Dellicarri v Hirschfeld*, 210 AD2d 584). If a provision can be orally waived, *a fortiori*, it can be waived by facsimile transmission. As a matter of law, defendant has waived the time constraint stated in the contract of sale for cancellation. Having waived the provision, defendant cannot hold plaintiffs to its terms without adequate notice that strict compliance will be required (*Bank Leumi Trust Co. v Block 3102 Corp.*, *supra*, at 590, citing *Nassau Trust Co. v Montrose Concrete Prods. Corp.*, 56 NY2d

175, 184). Furthermore, as a matter of equity, defendant is estopped to deny that her attorney's communication constitutes a waiver of the time limit contained in the mortgage contingency provision on the traditional equitable ground that plaintiffs incurred a substantial detriment (forfeiture of their down payment) by changing their course of conduct (as contemplated under the contract) in reliance on the statement, which was in all respects reasonable (*see, Triple Cities Constr. Co. v Maryland Cas. Co.*, 4 NY2d 443, 449-450).

Defendant does not discuss the effectiveness of facsimile communications except to state, in conclusory fashion, that "no binding communications were or could be sent by fax." This is a curious position to take with respect to a transaction in which facsimile transmission is the exclusive mode of written communication utilized by counsel. Moreover, according to the rider to the contract, the parties equate "telecopier transmission" with "certified or registered mail, return receipt requested". There is no merit to defendant's contention that the rider provision should be limited to "copies" of notices given in accordance with paragraph 14 of the contract (that is, by registered or certified mail, return receipt requested, or by courier). First, the use of the word "copies" in the rider is consistent with its use of the term "telecopier transmission". Second, there is no reason to send a mere courtesy copy by either of the alternative means provided—"certified or registered mail, return receipt requested". In the absence of any language limiting its operation, the only valid construction of the provision contained in the rider is that it supersedes the notification methods provided in the printed contract.

The Appellate Division, Third Department, in *Dellicarri v Hirschfeld* (210 AD2d 584, 585, *supra*) took a similarly practical approach to the question of notice upon the failure of the prospective purchaser to obtain the contemplated financing. The Court stated, "Strict compliance with the contract's notice provisions was not required, for defendants do not claim that they did not receive actual notice or that they were in any way prejudiced as a result of this minimal deviation." (*Supra,* at 585.)

The acts alleged in the complaint to constitute fraud do not arise from "circumstances extraneous to, and not constituting elements of, the contract" and therefore do not represent the breach of "a legal duty independent of the contract itself" (*Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.*, 70 NY2d 382, 389). Thus, plaintiffs' second cause of action was properly dismissed. Concur—Milonas, J. P., Rosenberger, Rubin, Kupferman and Mazzarelli, JJ.