AT&T Mobility Holdings B.V. v Grupo Salinas Telecom, S.A. de C.V. (2025 NY Slip Op 00625)

AT&T Mobility Holdings B.V. v Grupo Salinas Telecom, S.A. de C.V.

2025 NY Slip Op 00625

Decided on February 04, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 04, 2025

Before: Friedman, J.P., Gesmer, González, Scarpulla, Pitt-Burke, JJ. 

Index No. 650330/20 Appeal No. 3612 Case No. 2024-00331 

[*1]AT&T Mobility Holdings B.V., Plaintiff-Respondent,
v
Grupo Salinas Telecom, S.A. de C.., et al., Defendants-Appellants.

Kenneth Caruso Law LLC, New York (Kenneth Caruso of counsel), for appellants.
Quinn Emanuel Urquhart & Sullivan, LLP, New York (Adam M. Abensohn of counsel), for respondent.

Judgment, Supreme Court, New York County (Andrea Masley, J.), entered December 27, 2023, after a bench trial, in favor of plaintiff and against defendants, jointly and severally, in the total amount of $20,150,760.96, unanimously affirmed, with costs.
Plaintiff established at trial that under the terms of the parties' 2014 stock purchase agreement (the SPA), it is entitled to indemnification from defendants for a $14 million settlement that plaintiff entered into with the Servicio de AdministraciÓn Tributaria (the SAT), the Mexican tax regulator. Plaintiff also established that the allocation agreement that defendants attempted to extract from plaintiff, under which roughly 24% of the settlement would be allocated to defendants and roughly 76% would be allocated to plaintiff, did not comport with defendants' obligations under the SPA.
We reject defendants' argument that because plaintiff violated section 7.6(b) of the SPA, which concerns defendants' right to control the defense of a 2013 tax audit, defendants need not indemnify plaintiff for the portion of the settlement that pertains to 2013. Even assuming that plaintiff's submission of documents to the SAT breached section 7.6(b), defendants breached the SPA first by insisting on an allocation of the SAT settlement not supported by the SPA. Defendants' breach of the SPA entitled plaintiff to suspend its own performance, which then did not constitute a breach of the SPA (see Created Gemstones v Union Carbide Corp., 47 NY2d 250, 255 n 5 [1979]; see also IBM Credit Fin. Corp. v Mazda Motor Mfg. [USA] Corp., 92 NY2d 989, 993 [1998]).
Defendants contend that they may allocate the settlement because plaintiff was responsible for the 2015 audit while defendants were responsible only for the 2013 audit. However, this position contradicts the terms of the SPA, which states in section 7.5(a), "Seller [defendants] shall be responsible for, and shall indemnify Purchaser [plaintiff] . . . for . . . all Taxes and Damages relating to . . . (ii) any breach of any representation or warranty contained in Section 3.2(n)." Plaintiffs established at trial that defendant did, in fact, breach the representations and warranties included in SPA section 3.2(n)(ix). That section addressed income stemming from intercompany transactions, stating that the companies plaintiff acquired under the SPA need not include such income as part of their taxable income. There is no merit to defendants' argument that we should not address section 3.2(n)(ix) because the trial court did not rely on it in its decision (see Matter of American Dental Coop. v Attorney-General of State of N.Y., 127 AD2d 274, 279 n 3 [1st Dept 1987]).
We also reject defendants' contention that they need not indemnify plaintiff for the portion of the settlement that pertains to 2015 because plaintiff failed to give proper notice of the 2015 audit. Section 7.8(b) of the SPA states, "Any claim for indemnity under this [article] may be made only at a time prior [*2]to the five . . . year anniversary of the Closing Date," which was January 16, 2015. On July 29, 2019, well within the five-year period, plaintiff made it clear to defendants that it would seek such indemnity.
Moreover, plaintiff did not breach the SPA by failing to strictly comply with the notice requirements in the SPA. Plaintiffs substantially complied with the notice provision and defendants do not claim that they did not receive actual notice or that they were in any way prejudiced as a result of a minimal deviation in the prescribed manner of notification (see Baker v Norman, 226 AD2d 301, 304 [1st Dept 1996], lv dismissed 88 NY2d 1040 [1996]).
Similarly, section 7.6(a) of the SPA requires plaintiff to "promptly notify [defendants] in writing of [a] Tax Claim," and specifically provides that the failure to timely give such notice "shall not reduce the Taxes or Damages for which [defendants are] obligated to indemnify [plaintiff] . . . except to the extent of such Taxes or Damages resulting from [defendants] being adversely prejudiced by such failure." Defendants did not establish actual prejudice from late notice, as they did not show that they were deprived of their right to control the defense of an indemnifiable claim for a material portion of the proceedings (see Conergics Corp. v Dearborn Mid-W. Conveyor Co., 144 AD3d 516, 524, 527 [1st Dept 2016]). Defendants did not have the right to control the defense of the 2015 audit but argue only that they had the right to control the defense of the 2013 audit. In any event, even if defendants had the right to control the defense of the 2015 audit, they were not deprived of that right for a material portion of the proceedings. Indeed, they were involved from an early stage. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 4, 2025