Empanada Fresca LLC v 1 BK St. Corp. (2025 NY Slip Op 03130)

Empanada Fresca LLC v 1 BK St. Corp.

2025 NY Slip Op 03130

Decided on May 22, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 22, 2025

Before: Webber, J.P., Kennedy, Friedman, Mendez, Rodriguez, JJ. 

Index No. 160303/19|Appeal No. 3671M-5052&M-5420|Case No. 2023-02342|

[*1]Empanada Fresca LLC, Plaintiff-Appellant-Respondent, Jose Rodriguez, Counterclaim Defendant-Appellant- Respondent,
v
1 BK Street Corp., Defendant-Respondent-Appellant.

Pollack Law, PC, New York (Adina Levine of counsel), for appellants-respondents.
Smith Buss & Jacobs, LLP, Yonkers (John J. Malley of counsel), for respondent-appellant.

Order, Supreme Court, New York County (Gerald Lebovits, J.), entered April 17, 2023, which granted that part of defendant-landlord's motion for summary judgment dismissing Empanada Fresca LLC (the tenant)'s first, second, third, fourth, and portions of the fifth claims and denied the branch seeking dismissal of part of the tenant's fifth claim for breach of lease and the sixth claim for attorneys' fees; denied the tenant's and counterclaim defendant-guarantor's cross-motion for summary judgment dismissing the landlord's second counterclaim for breach of the guaranty; and granted the tenant's motion under CPLR 3025(b) for leave to amend the complaint, unanimously modified, on the law, to grant the cross-motion for summary judgment dismissing the landlord's second counterclaim for breach of the guaranty, and otherwise affirmed, without costs.
By lease agreement dated July 18, 2018, defendant 1 BK Street Corp., as landlord, leased the ground floor and portions of the basement in the mixed-use building located at 95 Greenwich Avenue in Manhattan to plaintiff Empanada Fresca LLC, as tenant, operating a Colombian restaurant, for a 15-year term. Section 3.1(b), titled "Licenses and Permits," stated that the tenant was responsible for obtaining same at its own expense, and under subsection (ii), "Landlord agrees to cooperate with Tenant to the extent that any applications or documents necessary to comply hereunder successfully, requires the Landlord's signature and acknowledgement." Section 3.4(b) of the lease contained a disclaimer of representations as to the following matters:
"(a) the physical . . . condition of any portion of the Premises and the Building; (b) the suitability, feasibility or legality of the use of the Premises for any particular purpose; (c) the . . . projected income from or development expense of the Premises; (d) the Premises compliance or non-compliance with any requirements of laws . . . ; or (e) any other matter whatsoever with respect to the Premises (except as contained herein). . . . Tenant acknowledges that it is leasing the Premises in its currently existing physical condition in its currently existing state of repair, and subject to the Premises and/or Building's non-compliance, if any, with any requirements of laws . . . ."
Section 4.1(a) contained an as-is clause which stated in relevant part:
"Tenant has inspected the Premises and agrees (a) to accept possession of the Premises in their 'as is' condition . . . except as expressly set forth herein, (b) that neither Landlord nor Landlord's agents have made any representations or warranties with respect to the Premises or the Building except as expressly set forth herein, (c) that Landlord shall be under no obligation to Tenant with respect to the physical condition of the Premises and (d) that Landlord has no obligation to perform any work, supply any materials, furnish any type or kind of services or facilities, incur any expense or make any alterations or improvements [*2]to the Premises to prepare the Premises for Tenant's occupancy . . . . Tenant hereby assumes full responsibility for the condition, operation, repair, replacement, maintenance and management of the Premises."
Section 4.2(j) stated in relevant part that unless the tenant's work would cure the condition or the compliance was the tenant's responsibility:
"Landlord shall be solely responsible for any noted violation of any applicable Requirements which either pre-dates this Lease or is a result of any work or filings done which pre-date this Lease, any hazardous materials, including, but not limited to, asbestos, and any cost associated with the removal or correction of same (each such condition, a 'Pre-Existing Condition')."
Section 4.2(j) continued with the caveat:
"Notwithstanding anything to the contrary contained herein, if Tenant is unable to procure any governmental permit and/or license required in order to permit the Premises to be used for the Permitted Use in the Premises or is not be [sic] permitted by a governmental authority to open for business for the Permitted Use in the Premises, in each case due to a Pre-Existing Condition, and Tenant notifies Landlord of same with reasonable details thereof, then, provided that the Tenant is not then in monetary or material non-monetary default . . . (i) Landlord shall promptly take such actions which are commercially reasonable in order to cure such Pre-Existing Condition so as to enable Tenant to obtain such permit and/or license and to open for business in the Premises for the Permitted Use, and (ii) if any such violation or failure to obtain sign offs or approvals actually delays Tenant's ability to perform Tenant's Work to prepare the Premises for Tenant's opening for business or to open for business and operate from the Premises, in each case for the Permitted Use, the Rent Commencement Date shall be delayed, and the Term shall be extended, by one (1) day for each day from and after the date on which Tenant sends Landlords such notice of such delay until such time as such delay no longer exists."
Lease exhibit A defined "Requirements" as "[a]ll present and future laws, rules, orders, ordinances, regulations, statutes, requirements, codes and executive orders . . . and all rules, regulations and government orders with respect thereto . . . ." Under section 5.1(iii), the tenant was responsible for obtaining all permits and government approvals, and "Landlord shall fully cooperate with Tenant in the obtaining thereof and shall execute any documents as may be reasonably required."
Section 16.2 stated in relevant part that the tenant was responsible for "the installation, maintenance and repair" of the gas meters for the premises. Under section 16.3, the landlord disclaimed liability for gas interruptions as follows:
"Except as provided herein, Landlord shall not be liable . . . to Tenant for any failure, defect or interruption of, or change in the supply, character and/or quantity of . .[*3]. gas service furnished to the Premises for any reason, . . . and no liability shall arise on the part of Landlord by reason of inconvenience, annoyance or injury to business, whether electricity and/or gas is provided by public or private utility . . . [but] if Tenant's business is required to close, and actually does close, as the direct result of an interruption in the electric and/or gas service that is caused solely by Landlord's or Landlord's agent's gross negligence or willful misconduct . . . Rent shall be abated beginning from the sixth (6th) consecutive day after such notice until the earlier of such service being resumed or Tenant's business can reasonably reopen or actually does reopen.
Section 19.4 contained an attorneys' fees provision in favor of the prevailing party in the enforcement of the lease. Section 21.1 contained a general "no representations" clause. Section 21.3 stated that neither party shall "be liable for any indirect, consequential or punitive damages." Under section 23.1, surrender required the landlord's written acceptance, and delivery of the keys to the landlord "shall not operate as a termination of this Lease or a surrender of the Premises." Section 23.2 contained a "no waiver" clause. Section 36.5 contained a merger clause.
By good guy guaranty also dated July 18, 2018, the tenant's principal, counterclaim defendant Jose Rodriguez, as guarantor, guaranteed the performance of the tenant's obligations under the lease. The good guy provision under paragraph 14(H) stated:
"The obligations of Guarantor under this Guaranty shall be limited to the period of time commencing on the date hereof and ending six (6) months after the date Landlord receives written notice from Tenant and on further condition that all of the following have occurred: (i) Landlord has received at least three (3) months written notice from Tenant of Tenant's intent to vacate the Premises; and (ii) Tenant has vacated the Premises on or before the date for delivery of possession to Landlord set forth by Tenant in such notice in the condition provided in the Lease, in vacant and broom clean condition, free of all tenancies and occupants; and (iii) at the time of such surrender, all Rent due under the Lease has been paid to Landlord up to the six (6) month period after the date Landlord has received written notice from Tenant under (i) above; (iv) Tenant has provided access to Landlord to enter the Premises at reasonable hours for the purpose of showing the same to prospective new tenants; and (v) Tenant has forfeited to Landlord its Security Deposit under the Lease in the amount set forth in Section 32 of the Lease.
For illustration purposes only, if Landlord receives Tenant's written notice to vacate the Premises on January 1st, 2019 Tenant shall vacate the Premises no later than April 1st, 2019 and at the time of such surrender all Rent due under the Lease shall be paid to Landlord through and including June 30th, 2019".
On November 8, 2018[*4], Con Edison informed the tenant that when a service worker went to the restaurant to turn on the gas for the tenant, he discovered a leak in the gas pipe distributing gas from the meter, referred to as the "house pipe," located in the common area cellar in the building, and that the meter bar supporting the gas meter was defective and outdated. The service worker placed a class A warning "red tag" on the meter and locked it, preventing its use. The tenant informed the landlord's property manager and gave her a copy of the red tag. The tenant hired a plumber to replace the defective equipment, but the plumber could not obtain a permit for the work because the gas services were not registered at the premises' address with the New York City Department of Buildings (DOB).
By letter dated January 15, 2019, the tenant informed the landlord: (1) the existing gas appliances were not registered with the DOB; (2) no plans or permits were filed since 1993; and (3) the use of existing gas appliances "as is" was a DOB violation, all of which constituted preexisting conditions under section 4.2(j) of the lease and gross negligence. By letter dated January 31, 2019, the landlord denied that the defects were preexisting conditions under the lease and disclaimed responsibility for remediating them. On or about July 19, 2019, the tenant's expediter learned the gas appliances were registered with the DOB at 87 Greenwich Avenue rather than the premises address at 95 Greenwich Avenue.
By email and certified mail dated August 2, 2019, the tenant notified the landlord of its intent to vacate on November 2, 2019. By letter dated August 7, 2019, the tenant informed the landlord that it could not install the new meter bar due to a 2002 Environmental Control Board (ECB) violation against the building, which was the landlord's responsibility to cure under lease section 4.2, and until cured, the tenant was not obligated to pay rent. By email dated August 29, 2019, the landlord acknowledged its receipt of the notice to vacate and requested the keys from the tenant to show the premises to prospective tenants.
On November 1, 2019, the tenant vacated the premises, surrendered the keys to the property manager, and paid an additional three months' rent of $29,664. On January 14, 2020, the landlord informed the tenant that the 2002 ECB violation was resolved. On June 28, 2021, the landlord relet the premises with a free rent period until December 1, 2021 and at lower monthly rent.
The tenant commenced this action asserting claims in the amended complaint for (1) fraudulent inducement based on the landlord's misrepresentations with respect to the tenant's ability to use the gas lines, seeking a refund of all rent paid under the lease; (2) rescission based on frustration of purpose; (3) damages for expenses in renovating the premises; (4) breach of the implied covenant of good faith and fair dealing; (5) breach of lease based on the landlord's failure to take commercially reasonable [*5]action to cure the gas violation, to cooperate with the tenant to obtain the approvals and permits to reconnect the gas, and to repair and replace the meter bar; and (6) attorneys' fees. The landlord denied the amended complaint's material allegations, and asserted affirmative defenses including its compliance under the lease, the no-waiver clause, the no-representations clause, and the tenant's responsibility for obtaining gas service. Further, the landlord asserted as an affirmative defense that the first four claims were duplicative of the contract claim. Landlord also asserted a first counterclaim against the tenant for breach of lease and a second counterclaim against the guarantor for breach of the guaranty. The tenant and the guarantor denied the material allegations in the counterclaims.
The landlord moved for summary judgment under CPLR 3212 dismissing the complaint and in its favor as to liability on the counterclaims. The landlord argued that lease sections 3.1, 3.4, 4.1, and 16.3 precluded the relief sought in the complaint; frustration of purpose did not apply because the lease addressed the circumstances; the negligence, promissory estoppel, and breach of the covenant of good faith and fair dealing claims were duplicative of the contract claim. The landlord also argued that it fulfilled its obligation under section 4.2(j) to cure the ECB violation; the tenant was not the prevailing party for the purpose of awarding attorneys' fees; and the landlord was entitled to summary judgment on the counterclaims based on its property manager's affidavit.
The tenant and the guarantor cross-moved for summary judgment under CPLR 3212 for dismissal of the counterclaims and under CPLR 3025(b) to amend the complaint to add facts relating to the red tag and to seek consequential damages. They argued that the violations were preexisting conditions under section 4.2(j) and that the landlord failed to cooperate with the tenant in obtaining the necessary permits under section 5.1(iii), the breaches of which relieved them from liability under the lease and guaranty; the guarantor properly exercised the good guy provision of the guaranty; the counterclaims only sought costs and expenses against the guarantor; and amendment of the complaint was proper because public policy prohibited a waiver of consequential damages for gross negligence.
Supreme Court granted in part and denied in part both motions. The court dismissed the tenant's first claim sounding in negligence and frustration of purpose arising from the defective gas line and meter bar as duplicative of the contract claim. The court found that to the extent the tenant intended to assert a fraud claim, the tenant failed to allege a knowing and intentional omission of material fact.
The court dismissed the branch of the claim asserting frustration of purpose, finding that the defective gas service equipment was not an unforeseeable condition because the lease spoke to those very circumstances under [*6]the as-is clause in section 4.1, the landlord's disclaimer of liability for gas service interruptions under section 16.3, and the tenant's acceptance of the building's noncompliance with any laws under section 3.4(b).
The court dismissed the second claim for rescission finding that the tenant had an adequate remedy at law for damages under the lease. The court found that because the tenant did not plead a legal duty outside the lease for promissory estoppel to apply, the no representations clause required dismissal of its third claim to recover expenses. The court dismissed the fourth claim for breach of the covenant of good faith and fair dealing as duplicative of the contract claim.
Turning to the fifth claim for breach of lease, the court determined that the meter and meter bar were the tenant's responsibility to maintain and repair under section 16.2, which rendered them within the exception to the landlord's 4.2(j) obligations. The court therefore dismissed that branch of the breach of lease claim but found there was a question of fact as to whether the tenant was entitled to a rent refund for the period the tenant was unable to open for business from January 15, 2019 through January 14, 2020. The court found that because the tenant could still prevail on the surviving lease claims, the sixth claim for attorneys' fees remained viable.
On the counterclaims, the court found questions of fact relating to the landlord's breaches of the lease precluded summary judgment in either parties' favor on the amounts due under the lease and guaranty. The court reasoned that because the notice of the tenant's intent to vacate was not deemed received until August 5, 2019 and the tenant moved out on November 1, 2019, the guarantor had not properly exercised the good guy terms of the guaranty in order to extinguish his liability, nor did waiver or estoppel arise from the landlord's silence following receipt of the surrender. Finally, the court granted the tenant's motion for leave to amend to add facts to the complaint and seek consequential damages.
Supreme Court properly granted the landlord's motion for summary judgment dismissing all but a portion of the tenant's fifth claim for breach of lease and the attendant sixth claim for attorneys' fees. The tenant's first claim, whether sounding in fraudulent inducement or negligence, was properly dismissed as duplicative of the contract claim (see Cronos Group Ltd. v XComIP, LLC, 156 AD3d 54, 62-63 [1st Dept 2017]; Duane Reade v SL Green Operating Partnership, LP, 30 AD3d 189, 190 [1st Dept 2006]). Additionally, the detailed no-representations, as-is, and merger clauses of the lease under sections 3.4(b), 4.1(a), 21.1, and 36.5 bar recovery for the landlord's alleged misrepresentations arising from the defective gas meter, meter bar, and house pipe, which are the subject of the contract claim in any event.
The second claim for rescission based on a frustration of purpose was also properly dismissed, as the [*7]tenant's claim for a rent refund survived, rendering money damages available (see Rudman v Cowles Communications, 30 NY2d 1, 13 [1972]). Additionally, the "narrow" doctrine of frustration of purpose does not apply where, as here, the circumstances were foreseeable by the parties and provided for under the contract (see Warner v Kaplan, 71 AD3d 1, 6 [1st Dept 2009], lv denied 14 NY3d 706 [2010]).
Turning to the third claim for promissory estoppel, it is also barred by the above lease provisions disclaiming representations with respect to the condition of the premises and the landlord's liability for those conditions except as set forth in sections 4.2(j) and 16.3. With respect to the fourth claim for breach of the implied covenant of good faith and fair dealing, the motion court properly concluded that it was duplicative of the breach of lease claim (see Ullmann-Schneider v Lacher & Lovell-Taylor, P.C., 121 AD3d 415, 416 [1st Dept 2014]).
With respect to the fifth claim for breach of the lease, the court properly sustained those parts of the claim that sought a rent abatement for the period from January 15, 2019 through January 14, 2020 when the 2002 ECB violation was cured and for the hazardous condition arising from the leaking "house pipe" supplying gas to the premises. The court properly determined that there were questions of fact arising from the uncontroverted statements in the affidavit of the tenant's former business partner, who averred that he informed the landlord's property manager that the house pipe was shut off due to a leak and gave her a copy of the "red tag" posted by ConEd warning of the condition, and she responded that the landlord would not assist in its cure. Contrary to the landlord's contention, the court did not find that the red tag was a "noted violation" under section 4.2(j) but rather that the underlying house pipe leak was emitting "hazardous material" under that section; the tenant showed that the house pipe was located in a common area of the building, which placed it outside its duty to maintain and repair the gas meters under lease section 16.2. In any event, the landlord was required to cooperate in curing the conditions under section 5.1(iii). Thus, the court properly concluded that the meter and meter bar were the tenant's obligation, and the red tag was not a noted violation, but the underlying gas leak and ECB violation required the landlord to assist the tenant in curing the conditions under sections 4.2(b), 4.2(j), 5.1(iii), and 16.3.
Supreme Court properly denied the landlord's motion for summary judgment in its favor on its counterclaims for unpaid rent and liquidated damages under the lease and guaranty based on the tenant's surviving claims for the landlord's breaches of the lease, which, if the tenant prevails, excused the tenant from performance (see EXRP 14 Holdings LLC v LS-14 Ave LLC, 228 AD3d 498, 499 [1st Dept 2024]).
Supreme Court should have granted the guarantor's motion for summary judgment [*8]on his counterclaim under the guaranty. The landlord acknowledges that it received written notice of the tenant's intent to vacate the premises and that the tenant vacated the premises on or before the date stated in the notice of intent to vacate. The landlord asserts, however, that because it effectively received that written notice three days short of the stated three months, the guarantor is still liable to landlord for the full amount tenant owes landlord for tenant's failure to meet its lease obligations.
Under a good guy guaranty, any liability on the part of the guarantor is extinguished once a tenant surrenders the premises as long as the tenant has paid the landlord everything owed through the date of termination (see e.g. Premier 1122 Madison Realty, LLC v Halston N.Y., LLC, 222 AD3d 500, 500 [1st Dept 2023]). "Good Guy guaranties are commonly understood to apply to obligations which accrue prior to the surrender of the lease premises" (Russo v Heller, 80 AD3d 531, 532 [1st Dept 2011]; see also ROC-Lafayette Assoc., LLC v Sturm, 233 AD3d 418, 419 [1st Dept 2024] [terms of a guaranty "are to be strictly construed in favor of a private guarantor" and a "guarantor should not be bound beyond the express terms of his guarantee"]. "As a rule, the terms of a guaranty determine its duration and guaranties generally 'apply to debts arising during the guaranty period, but not due and payable until after termination'" (Heller at 531-532, quoting Bandag, Inc. v National Acceptance Co. of Am., 855 F2d 491, 494 n 2 [7th Cir 1988]).
The record is clear that the tenant's notice of intent to vacate was three days short of the required three months notice under paragraph 14(H) of the guaranty. It is undisputed that since the notice was mailed to landlord on August 2, 2019 and was therefore deemed served on August 5, 2019, it should have stated that the tenant would vacate the premises on November 5, 2019 as opposed to November 2, 2019. It is also undisputed that the tenant vacated the premises and surrendered the same to the landlord on November 1, 2019. The record is also clear that but for the short notice of three days, the guarantor complied with all the stated conditions under 14(H)of the guaranty.
The landlord concedes that prior to its acceptance of surrender of the premises, all rent due under the lease had been paid up to the six-month period after the landlord received notice from the tenant. The landlord concedes that the premises were surrendered in vacant and broom clean condition, free from all tenancies and occupants. The landlord also concedes that the tenant forfeited its security deposit, and that the landlord was allowed access to the premises. Despite the substantial compliance by the guarantor to the conditions of the guaranty, the landlord argues that the guarantor remains liable as a result of the short notice. The landlord does not state how it was prejudiced, or how it received less than its bargain, by its receipt of the short [*9]notice. It simply states that the notice received was less than the required three months notice and therefore the guarantor remains liable.
As the landlord "does not claim that [it] did not receive actual notice or that [it] was in any way prejudiced as a result of this minimal deviation" strict compliance with the contract's notice provisions was not required (Baker v Norman, 226 AD2d 301, 304 [1st Dept 1996], lv dismissed 88 NY2d 1040 [1996], quoting Dellicarri v Hirschfeld, 210 AD2d 584, 585 [3d Dept 1994]). Given this, the guarantor's motion for summary judgment on the guaranty should have been granted.
Finally, regarding the tenant's motion to amend the complaint to add certain facts and to seek consequential damages for the landlord's alleged gross negligence, we find that the motion was providently granted, as the landlord failed to establish any surprise or prejudice arising from the delay in seeking to amend (see e.g. Jacobson v Croman, 107 AD3d 644, 645 [1st Dept 2013]). Because the amendment alleges that the landlord refused to assist the tenant in curing the above-described leaking house pipe after receiving notice, this refusal violated section 16.3 of the lease, and "public policy forbids a party from attempting to avoid liability for damages caused by grossly negligent conduct," that branch of the tenant's motion was providently granted (see Obremski v Image Bank, Inc., 30 AD3d 1141, 1141-1142 [1st Dept 2006]).
We have considered the remaining contentions and find them unavailing.
M-05052— Empanada Fresca LLC v 1 BK Street Corp.
Motion to strike granted to the extent of striking the landlord's reply brief points IV and V A. at pages 11-22, and otherwise denied.
M-05420— Empanada Fresca LLC v 1 BK Street Corp.,
Cross-motion to strike granted to the extent of striking pages 39-40 and 42-43 of the tenant and the guarantor's brief and page 13 of the tenant and the guarantor's reply brief, and otherwise denied.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 22, 2025